IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| COLLECTIVE SHARED SERVICES, LLC<br>108 West 13th Street<br>Wilmington, DE  18801[1] | : : : : | |
| Plaintiff and<br>Counterclaim Defendant | : : : | |
| v. | : : | Civil Action No. 8:19-cv-01208-GJH |
| CPDA Canvass Network, LLC<br>449 Troutman Ave., Suite A<br>Brooklyn, NY  11237 | : : : : | |
| Defendant and<br>Counterclaim Plaintiff | : : : | |

## DEFENDANT'S ANSWER AND COUNTERCLAIMS

Defendant and Counterclaim Plaintiff CPDA Canvass Network, LLC ("CPDA"), by and through its undersigned counsel, hereby states for its Amended Answer and Counterclaims as follows:

### JURISDICTION AND VENUE

1. Paragraph 1 is a legal conclusion to which no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 1 and on that basis denies them.

2. Defendant admits that, pursuant to the Contract attached as Exhibit A to the Complaint, it consented to personal jurisdiction in the "federal or state courts of Maryland" for

---

[1] In the initial caption for the Complaint and attached cover sheet, Plaintiff lists as its address "108 West 13th Street, Wilmington, DE 18801."  *See* [Doc. 1], Attachment A.  In subsequent pleadings filed with the Circuit Court for Montgomery County, however, Plaintiff lists its address as "5201 Nahant Street, Bethesda, MD 20816."  *See* [Doc. 1] Attachments B, C.  Defendant takes no position as to the address of Plaintiff.

"[a]ny suit, action or proceeding … arising under or relating to" the Contract.  To the extent there are other allegations in Paragraph 2, such allegations are legal conclusions to which no response is required.  To the extent any further response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2 and on that basis denies them.

3. Defendant admits that, pursuant to the Contract attached as Exhibit A to the Complaint, it consented to venue in the "federal or state courts of Maryland" for "[a]ny suit, action or proceeding … arising under or relating to" the Contract.  To the extent there are other allegations in Paragraph 3, such allegations are legal conclusions to which no response is required.  To the extent any further response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3 and on that basis denies them.

## THE PARTIES

4. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and on that basis denies them.

5. CPDA admits that it is a limited liability company with its principal office located at 449 Troutman Ave., Suite A, Brooklyn, NY 11237.  CPDA denies that it is organized in Delaware.

## FACTS GIVING RISE TO CAUSE OF ACTION

6. Admitted.

7. Defendant admits that CSS owed a duty of care to CPDA.  The balance of Paragraph 7 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of each and

every allegation contained in Paragraph 7 and on that basis denies them.

8. Defendant admits that it had obligations to CSS pursuant to the Contract as set forth therein. With respect to the balance of Paragraph 8, Defendant lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 8 and on that basis denies them.

9. Denied.

10. Denied.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Defendant denies that it made any misrepresentations to CSS. With respect to the balance of Paragraph 15, Defendant lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 15 and on that basis denies them.

## COUNT I - RESCISSION

16. Paragraph 16 requires no response as it merely adopts by reference the allegations set forth in Paragraphs 1 through 15, to which Defendant has already responded.

17. Defendant denies that it made any misrepresentations to CSS. With respect to the balance of Paragraph 17, Defendant lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 17 and on that basis denies them.

18. Paragraph 18 is a legal conclusion to which no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 18 and on that basis denies them.

## PRAYER FOR RELIEF

Defendant respectfully requests that this Court deny Plaintiff's prayer for relief in the unnumbered paragraph following numbered Paragraph 18 of the Complaint.

All allegations not specifically and expressly admitted herein by Defendants are deemed to be denied.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim or cause of action upon which relief may properly be granted.

2. Plaintiff's claims, in whole or in part, are barred by the contractual limitations period.

3. Plaintiff's claims are barred, in whole or in part, under the doctrines of waiver, laches, estoppel, ratification, acquiescence, or unclean hands.

4. Defendants reserve the right to plead, assert, and rely on all proper affirmative defenses lawfully available, including those which may be disclosed or discovered through further assertions by Plaintiff or otherwise through discovery.

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff CPDA Canvass Network, LLC ("CPDA"), by and through its undersigned counsel, hereby alleges upon personal knowledge as to its own acts and as to all other matters upon information and belief as follows:

## PARTIES, JURISDICTION, AND VENUE

1. CPDA is a non-profit organization, whose parent company, Center for Popular Democracy Action, is a non-profit 26 U.S.C. § 501(c)(4) corporation that works to create equity, opportunity, and dynamic democracy in partnership with high-impact base-building organizations,

organizing alliances, and progressive unions.

2. In furtherance of its civic goals, on or about March 5, 2018, CPDA entered into, *inter alia*, a multi-state contract with Plaintiff/Counterclaim Defendant Collective Shared Services, LLC ("CSS") in the form attached to the Complaint [Docs. 1.2, 2] as Exhibit A (the "Contract").

3. On information and belief, CSS is owned by Duane Stillwell, and is affiliated with and/or the alter ego of Direct Opportunities Group d/b/a TruCorps.

4. Pursuant to the Contract, the parties agreed to submitted themselves to the personal jurisdiction of, and venue in, this Court.

## FACTUAL ALLEGATIONS

5. The purpose of the Contract was to engage CSS to provide certain human resource functions for a multi-state canvass for community education and public outrage, including in connection with the 2018 midterm elections.

6. From the outset, CSS failed to perform its obligations under the Contract.

7. Specifically, the Contract required CSS to invoice CPDA five (5) days prior to paying employees. CSS failed to invoice CPDA for services in either a timely or an appropriate fashion, and further failed to provide CPDA with the requisite supporting information underlying the invoices required by the Contract. CSS then used its own failures to invoice CPDA properly as justification for refusing to pay canvassers as required by the Contract.

8. Moreover, the invoices submitted by CSS lacked appropriate detail and, in many cases, were inaccurate. CSS repeatedly requested appropriate detail for the invoices, which CSS failed to supply.

9. Despite not producing adequate documentation, CSS threatened not to pay the canvassers performing essential functions for CPDA unless CPDA wired money to CSS. CPDA

5

complied to ensure that the mission-critical work was completed, despite being effectively "held hostage" by CSS.

10. Due to CSS's continuing failures to invoice properly, the Parties executed a rider to the Contract on August 21, 2018 (the "Rider") clarifying that CPDA's obligations to pay CSS would arise "within two weeks of receiving **correct invoices, and only after receiving correct invoices** from Collective Shared Services." *See* [Doc 1.4, Attachment C] Complaint Exhibit A (Contract) at 7 (emphasis added).

11. Notwithstanding the Rider, CSS continued to fail to provide correct invoices with appropriate supporting documentation to CPDA.

12. In September, CSS failed to pay canvassers, many of whom then failed to show up for work, irreparably harming CPDA's mission right before the 2018 midterm elections.

13. CSS, by and through its principal, Duane Stillwell, admitted that this sort of problem had occurred "in the past," and, in connection with another contract with CPDA and its affiliates, offered to conduct a robocall to canvassers apologizing for the error. That robocall script admitted that neither CPDA nor any of its affiliated entities were at fault in any way with the failure to pay canvassers. CSS undertook the robocall.

14. Notwithstanding the robocall, CSS failed to pay canvassers in the immediately following pay period, and again the week after that. By September 24, 2018, CSS had failed to pay more than a dozen CPDA canvassers for three weeks in a row.

15. CSS's failures materially damaged CPDA's operations, leading to the resignation of nearly 50 canvassers, a city-wide "sick out" in the Philadelphia office, and strained relationship between CPDA and its affiliates working with canvassers to be paid by CSS.

16. On September 25, 2018, Stillwell admitted that CSS had failed to meet CPDA's

needs and offered to find alternative solutions.

17. By October 2018, CSS failed to pay canvassers in multiple states and refused to fulfill its obligations under the Contract. In response to requests by CPDA that CSS perform pursuant to the Contract, CSS demanded that CPDA provide additional information in a new "portal" system that was not a part of the contract and which CPDA did fully not know how to use. CSS also unilaterally demanded an additional wire of more funds from CPDA.

18. On October 12, 2018, through its counsel, CSS purported to terminate the Contract. In response, CPDA once again requested invoices and supporting detail, which were not provided.

19. CSS failed to provide required W-2s to certain canvassers hired pursuant to the Contract.

20. CSS failed to provide and administer all health insurance and welfare benefits to all appropriate canvassers hired pursuant to the Contract to whom such benefits applied (the "Covered Employees"). *See* [Doc 1.4, Attachment C] Complaint Exhibit A (Contract) at 1 ¶ 1.2.

21. On information and belief, CSS failed fully to report and remit payroll taxes in compliance with all federal and state tax requirements on all wages paid to canvassers working on behalf of CPDA. *See id.* at 1 ¶ 1.1.

22. On February 11, 2019, CPDA, through its counsel, informed counsel for CSS that it was represented by counsel and that, *inter alia*, all communications related to the Contract should be directed to counsel. *See* Exhibit A (the "February 11 Letter").

23. Notwithstanding the February 11 Letter, Duane Stillwell, in his own name, and in the name of a related entity, TruCorps, sent out various false and defamatory emails and other communications via social media to employees and vendors of CPDA, and others, alleging, *inter alia*, that TruCorps "paid no one but themselves." *See, e.g.,* Exhibit B.

7

24. On information and belief, CSS obtained nonpublic email addresses of CPDA employees and canvassers pursuant to the Contract. Such email addresses were considered "Confidential Information" pursuant to Paragraph 8 of the Contract. *See* [Doc 1.4, Attachment C] Complaint Exhibit A (Contract) at 5 ¶ 8.

25. Notwithstanding the obligations of the Contract, CSS used CPDA's Confidential Information to disseminate its defamatory emails.

26. As a result, the next day, counsel for CPDA once again informed counsel for CSS to cease its unauthorized communications with CPDA and its employees. *See* Exhibit C (the "March 15 Letter").

27. Notwithstanding the March 15 Letter, CSS continues to contact CPDA employees and vendors and others with false and defamatory emails and other communications via social media and other means. *See, e.g.,* Exhibit D.

## FIRST COUNTERCLAIM
## BREACH OF CONTRACT

28. Counterclaim Plaintiff CPDA repeats and realleges each of the allegations contained in Paragraphs 1 through 27 of this Counterclaim.

29. Counterclaim Plaintiff CPDA fulfilled their obligations under the Contract.

30. On information and belief, CSS obtained nonpublic email addresses of CPDA employees and canvassers pursuant to the Contract and used said email addresses to send defamatory emails despite the fact that such information was "Confidential Information" of CPDA to which CSS was required to use only "for the purpose of fulfilling its obligations under this Agreement." *See* [Doc 1.4, Attachment C] Complaint Exhibit A (Contract) at 5 ¶ 8.

31. Counterclaim Defendant CSS owed a contractual obligation to CPDA to, *inter alia*,

perform all administrative and human resources services as set forth in the Contract, including without limitation proper reporting and remittance of all federal and state tax requirements; properly invoice CPDA for services rendered; provide adequate supporting documentation; pay canvassers; provide canvassers with health insurance; respect the confidentiality of and not use CPDA's confidential information except as authorized by the Contract; and provide canvassers with W-2s.

32. Counterclaim Defendant failed to perform the obligations in full set forth in Paragraph 31, thus materially breaching its obligations under the Contract.

33. As a result of Counterclaim Defendant's breach, CPDA has suffered losses in an amount to be determined at trial.

## SECOND COUNTERCLAIM
## UNJUST ENRICHMENT

34. Counterclaim Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 33 of this Counterclaim.

35. Counterclaim Plaintiff has conveyed a substantial benefit on Counterclaim Defendant by, *inter alia*, paying various deposits and/or retainers to CSS.

36. Counterclaim Defendant, by and through its employees and officers, has acknowledged the receipt of this benefit and has used the benefit to enrich itself.

37. Counterclaim Plaintiff has demanded payment of the sums owed to it, which Defendant has refused to do.

38. Counterclaim Defendant acceptance and retention of this benefit under the circumstances makes it inequitable for Defendant to retain the benefit.

39. Counterclaim Plaintiff is entitled to recover from Counterclaim Defendant amounts equal to the benefits conferred to Counterclaim Defendant, plus interest thereon.

40. As a direct and proximate result of Counterclaim Defendant's wrongful conduct and unjust enrichment, Counterclaim Plaintiff is entitled to restitution of any sums tendered to Defendant.

## THIRD COUNTERCLAIM
## DEFAMATION

41. Counterclaim Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 40 of this Counterclaim.

42. On or about February 10, 2019, in an effort to ruin CPDA's reputation in the community and with its employees and vendors, Counterclaim Defendant began contacting known employees and vendors of CPDA, and others, and spreading malicious falsehoods, including allegations that with the intention of interfering with the economic relationships between those parties and CPDA.

43. On information and belief, CSS obtained nonpublic email addresses of CPDA employees and canvassers pursuant to the Contract and used said email addresses to send defamatory emails despite the fact that such information was "Confidential Information" of CPDA to which CSS was required to use only "for the purpose of fulfilling its obligations under this Agreement." *See* [Doc 1.4, Attachment C] Complaint Exhibit A (Contract) at 5 ¶ 8.

44. Counterclaim Defendant falsely told employees and vendors of CPDA, and others, *inter alia*, that CPDA "paid no one but themselves," despite the fact that CPDA paid CSS *in advance* and that CSS, not CPDA, failed to pay essential canvassing staff.

45. These and other defamatory statements were knowingly, or, in the alternative, at least negligently made by Counterclaim Defendant and its agents about Counterclaim Plaintiff.

46. Counterclaim Defendant CSS, through its agents, published these false and defamatory statements via direct email and via publication on social media, including email to CPDA's employees, despite being advised that such employees were represented by counsel and not to be contacted directly.

47. Counterclaim Defendant CSS acted with knowledge of the falsity of the statements and with the intent to harm Counterclaim Plaintiff's non-profit business and civic activities when publishing these false and defamatory statements about CPDA.

48. As a result of the false and defamatory statements published by CSS, the character and reputation of CPDA were harmed, its relationship with employees and vendors suffered, its standing in the community was diminished, and thereby suffered economic loss.

## FOURTH COUNTERCLAIM
## TORTIOUS INTERFERENCE

49. Counterclaim Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 48 of this Counterclaim.

50. Counterclaim Plaintiff advised Counterclaim Defendant of its existing contractual relationships with canvassers and vendors.

51. On or about February 10, 2019, Counterclaim Defendant began contacting known employees and vendors of CPDA with the intention of interfering with the economic relationships between those parties and CPDA.

52. Counterclaim Defendant falsely told employees and vendors of CPDA, inter alia, that CPDA "paid no one but themselves," despite the fact that CPDA paid CSS in advance and that CSS, not CPDA, failed to pay essential canvassing staff.

53. The conduct of CSS in communicating with the employees and vendors of CPDA was intentional, willful, and calculated to cause damage to CPDA's lawful business. The conduct was perpetrated with the intentional and improper purpose of causing damage and without justifiable cause.

54. As a result of the conduct of CSS, CPDA has suffered economic loss and damage to its reputation and standing in the community, and CPDA will continue to suffer other consequential damages and harm to reputation.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff CPDA respectfully requests that the Court:

a. Award compensatory damages for CSS's breach of contract, and all other damages allowable by law, sustained by Plaintiffs, including without limitation (a) refunding all sums paid to CSS as deposits or retainers; (b) all consequential damages resulting from CSS's failure to perform its obligations pursuant to the contract, including without limitation paying all taxes owed to canvassers; (c) pre- and post-judgment interest; (d) reasonable attorneys' fees; and (e) all other costs incurred in collection of the sums owed to Plaintiffs;

b. Award compensatory damages for CSS's defamatory statements;

c. Award punitive damages for CSS's defamatory statements;

d. Award compensatory damages for CSS's tortious interference;

e. Award interests and costs; and

  f. Award Plaintiffs such other and further relief as the Court deems just and appropriate.

Dated: May 1, 2019       _____/s/_____
              P. Andrew Torrez (D.Md. Bar No. 27268)
              THE LAW OFFICES OF P. ANDREW TORREZ, LLC
              28 E. Susquehanna Ave., Suite 206
              Towson, Maryland 21286
              Phone:  (240) 230-7309
              email:  patorrez@patorrez.com

              *Attorney for Defendant*
              *CPDA Canvass Network, LLC*

## CERTIFICATE OF SERVICE

 I hereby certify that on this 1st day of May, 2019, the foregoing Answer and Counterclaim was filed electronically via CM/ECF and electronic copies were served on counsel of record.

              \_\_\_\_\_/s/  *P. Andrew Torrez*_____
              P. Andrew Torrez