IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

_____

COLLECTIVE SHARED SERVICES, LLC :
                                               :
 d/b/a TruCorps
                                               :
       Plaintiff and
       Counterclaim Defendant,    :
                                               :
        v.                                         :     Civil Action No. 8:19-cv-01208-GJH
                                               :
CPDA Canvass Network, LLC,     :
                                             :
       Defendant and
       Counterclaim Plaintiff        :
_____:

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SANCTIONS</u>**

In support of its Motion for Sanctions (the "Motion"), Defendant and Counterclaim Plaintiff CPDA Canvass Network, LLC ("CPDA"), by and through its undersigned counsel, hereby states as follows:

**SUMMARY**

No good deed goes unpunished. For nearly *three-quarters of a year*, CPDA has tried, in good faith, to work amicably with counsel for Plaintiff/Counterclaim Defendant CSS d/b/a TruCorps to rein TruCorps's wildly inappropriate behavior in violation of the Maryland Rules of Professional Conduct, to no avail. Indeed – although it did not have to – CPDA, as a courtesy, served a draft[1] of the Motion and this supporting Memorandum of Law (the "Memorandum") on

---

[1]     The instant Motion has changed slightly (but not in substance) from the version sent to counsel for TruCorps on September 24, 2019; *see infra* at n.2.

TruCorps, who (after acknowledging receipt of the Motion) declined to even *discuss* it in any way. *See* Attachment 1, Affidavit of P. Andrew Torrez ("Torrez Aff.") at 3 ¶¶ 12-14 & Exhibit G thereto. Accordingly, CPDA is left with no choice but to seek relief from this Court.

Specifically, on at least **fifteen** separate occasions, TruCorps, by and through its principal and sole member, Duane Stillwell, has engaged in unauthorized communications with CPDA, its officers, employees, volunteers, and vendors despite being on actual notice via numerous letters to counsel that such communications violate the Maryland Rules and are plainly inappropriate to a party represented by counsel in a lawsuit *filed by TruCorps*.

TruCorps's communications are defamatory, intended to harass and to demean CPDA in the larger non-profit community, and to interfere with CPDA's existing third-party relationships. **These communications continue to this day**. Counsel for CPDA has repeatedly and politely requested that TruCorps cease its behavior, but those requests have fallen on deaf ears. Incredibly, after CPDA sent a courtesy copy of this very Motion and Memorandum to opposing counsel in a last-ditch effort to resolve this dispute without involving this Court, TruCorps's response was *to send yet another unauthorized letter directly to CPDA*.[2] *See* Attachment 2, Affidvait of Hetal

---

[2] Although this is not a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, out of an abundance of caution and in order to exhaust every possible effort to resolve this dispute amicably, CPDA served a prior draft of this pleading on counsel for CSS on September 24, 2019 and gave CSS fourteen (14) days' notice prior to filing the instant Motion with this Court to give CSS every opportunity to redress the conduct complained of herein. The prior draft of the Memorandum and supporting Motion was substantially similar, with the exceptions that (a) that prior draft was consolidated into a single document; (b) this Memorandum's references to CSS's subsequent conduct; and (c) typographical and stylistic edits and corrections. A true and correct copy of that draft Motion is attached hereto. *See* Attachment 1, Affidavit of P. Andrew Torrez ("Torrez Aff.") at 2-3 ¶¶ 11 & Exhibit F thereto (9/24/2019 Draft Motion for Sanctions).

Dalal ("Dalal Aff.") at 4 ¶ 16 & Exhibit O thereto (9/28/2019 email entitled "2018 TAX REVISIONS").

## LEGAL STANDARD

This Court has broad and inherent authority to sanction inappropriate conduct by litigants, particularly where such conduct concerns matters regarding the maintenance of order, the administration of justice, and the conduct of parties and parties' counsel. *See Projects Management Co. v. Dyncorp Intern. LLC*, 734 F.3d 366 (4th Cir. 2013) (holding that courts retain broad discretion to utilize its inherent authority to sanction conduct that is inconsistent with the orderly administration of justice); *see also United States v. Shaffer Equipment Co.*, 11 F.3d 450, 462 (4th Cir. 1993) ("due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates.").

This broad authority of this court to sanction parties specifically extends to sanctioning parties for violations of the Rules of Professional Conduct. *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 749 (D. Md. 1997). *Ex parte* communications to a party represented by counsel are plainly prohibited by Maryland Rule of Professional Conduct 4.2. This Court has specifically and repeatedly sanctioned parties for such *ex parte* communications. *See Chang-Williams v. United States*, No. 10-cv-00783-JKS, 2012 U.S. Dist. LEXIS 9132, *, 2012 WL 253440 (D. Md. Jan. 25, 2012); *Camden v. State of Maryland*, 910 F.Supp. 1115, 1117 (D. Md. 1996). This principle is so robust as to apply even to unauthorized *ex parte* communications with **nonparties** who are nevertheless aligned with parties to an action. *See, e.g., Harlan v. Lewis*, 982 F.2d 1255 (8th Cir. 1993) (in a medical malpractice action a party was sanctioned for *ex parte* communications made to Plaintiff's nonparty treating physicians). In short: this Court greatly prizes the protection that

representation provides during litigation and has not hesitated to take appropriate measures to ensure that the parties before it comply with the Maryland Rules of Professional Conduct.

Such measures are plainly appropriate here.  Plaintiff/Counterclaim Defendant TruCorps's conduct is extreme, egregious, and merits sanctions as set forth herein.

## ARGUMENT

I. **ON AT LEAST FIFTEEN (15) OCCASIONS, TRUCORPS, BY AND THROUGH ITS PRINCIPAL DUANE STILLWELL, ENGAGED IN UNAUTHORIZED *EX PARTE* COMMUNICATIONS WITH CPDA, ITS OFFICERS, EMPLOYEES, VOLUNTEERS, AND VENDORS.**

Even before this litigation was filed, TruCorps's strategy was clear from the outset: to harass and defame CPDA by sending emails and other unauthorized communications to CPDA's officers, employees, volunteers, and vendors.

CPDA engaged counsel in connection with the underlying dispute that gave rise to this lawsuit on February 6, 2019. *See* Attachment 1, Affidavit of P. Andrew Torrez ("Torrez Aff.") at 1 ¶ 2.  Five days later, counsel for CPDA informed counsel for TruCorps that CPDA was represented by counsel and that all communications related to the dispute between the parties should be directed to counsel and not to CPDA directly. *See id.* at 1 ¶ 3 & Exhibit A thereto (2/11/19 letter from P. Andrew Torrez to Joseph E. Sandler).  Counsel for TruCorps never responded to that letter. *Id.* at ¶ 4.  Two weeks later, counsel for CPDA reiterated (in bold-faced, underlined type) that "**all further correspondence in this matter**" should be directed to counsel and not to CPDA directly. *See id.* at 1 ¶ 5 & Exhibit B thereto (2/25/19 email from P. Andrew Torrez to Joseph E. Sandler) (emphasis in original).  Counsel for TruCorps never responded to that email, either. *Id.* at 1 ¶ 6.

A.  **TruCorps's Unauthorized Communications Immediately After Filing the Instant Lawsuit in March and April of 2019**.

On March 11, 2019, TruCorps filed the instant lawsuit in state court in Maryland. *See* Notice of Removal [Doc. 1], Attachment A [Doc. 1-2] (Complaint). Notwithstanding (a) having *filed a lawsuit* and (b) having received two separate communications to counsel requesting, pursuant to Maryland Rule of Professional Conduct 4.2, that all future communications relating to this litigation be relayed only through counsel, TruCorps continued to communicate *ex parte* with CPDA. Indeed, those communications resumed **just four days** after TruCorps filed the instant lawsuit. *See* Torrez Aff. at 2 ¶ 7 & Exhibit C thereto (3/15/19 letter from P. Andrew Torrez to Joseph E. Sandler, attaching 3/15/19 email). As a result, counsel for CPDA sent yet another request to counsel for TruCorps requesting that TruCorps cease its behavior and advising that CPDA was considering pursuing legal remedies in connection with these ongoing unauthorized communications, and requesting confirmation by March 20, 2019 that, *inter alia*, the unauthorized communications would stop (the "March 15 Letter"). *Id.* Counsel for TruCorps never responded to the March 15 Letter. *Id.* at 2 ¶ 8.

Instead, just **two days later,** TruCorps sent yet another email communication to CPDA. *See* Attachment 2, Affidvait of Hetal Dalal ("Dalal Aff.") at 1 ¶ 2 & Exhibit A thereto (3/22/2019 email entitled "Coerced Project Funding"). In that email – which was sent to CPDA and its employees – TruCorps falsely claimed that CPDA failed to pay over $70,000 that it was owed, claimed that CPDA misled TruCorps, and alleged that CPDA canvassers were unreliable. *Id.* at 2.

Three days after sending the "Coerced Project Funding" email, TruCorps **again** contacted CPDA and its employees, this time (falsely) claiming that CPDA had given TruCorps false

information.  *See* Dalal Aff. at 1 ¶ 3 & Exhibit B thereto (3/27/19 email entitled "Money Update") at 1.  And one week after that, TruCorps sent an email to CPDA's in-house counsel raising allegations regarding Make The Road.  *See* Dalal Aff. at 1 ¶ 4 & Exhibit C thereto (4/3/19 email entitled "Money Update – ACCE Data").

As a result of this flurry of unauthorized conduct, counsel for CPDA called TruCorps's counsel and attempted to resolve this issue over the phone on April 5, 2019 (the "April 5 Phone Call").  *See* Torrez Aff. at 2 ¶ 9.  Counsel for spoke with an associate, who promised to address the situation.  *Id.*  Further to that phone call, counsel for CPDA sent the associate an email containing the March 15 Letter.  *Id.* at 2 ¶ 10 & Exhibit D thereto (the "April 5 Email").

  B. <u>TruCorps's Unauthorized Communications After April 5 Phone Call in April and May of 2019</u>.

Unfortunately, the April 5 Phone Call appeared to have no effect on TruCorps's behavior.  Throughout the month of April, TruCorps would continue to send five more emails and other unauthorized communications to CPDA employees complaining about various aspects of the instant litigation and related matters, and falsely accusing CPDA and Make The Road of failing to pay canvassers, of being legally liable for misconduct, and accruing tax liability.  *See* Dalal Aff. at 2 ¶ 5 & Exhibit D thereto (4/14/19 email entitled "Sleeping W The Enemy"); *id.* at 2 ¶ 6 & Exhibit E thereto (4/15/19 email, same title); *id.* at 2 ¶ 7 & Exhibit F thereto (4/16/19 email entitled "Math Matters"); *id.* at 2 ¶ 8 & Exhibit G thereto (4/19/19 email entitled "Bed Hopping"); *id.* at 2 ¶ 9 & Exhibit H thereto (4/22/19 blog post entitled "Bed Hopping").

Those communications were harassing and defamatory; in them, TruCorps alleged that CPDA handed over "member or donor money…to the enemy," *see id.*, and that CPDA engaged in "non-profit payroll larceny," *see id.* at 2 ¶ 7 & Exhibit F (4/16/19 "Math Matters" email), among

6

other outrageous and false accusations.

As a result, on May 1, 2019, when CPDA answered the instant Complaint, it also filed Counterclaims against TruCorps. *See* CPDA's Answer and Counterclaims [Doc. 5]. Count III of CPDA's Counterclaims alleged defamation, *see id.* at 10-11 ¶¶ 41-48, and Count IV alleged tortious interference, *see id.* at 11-12 ¶¶ 49-54.

TruCorps's response was (a) to move to dismiss CPDA's Counterclaims, *see* TruCorps's Motion to Dismiss [Doc. 8]; and (b) **to continue to send the same harassing emails that gave rise to Counts 3 and 4 in the first place**. Indeed, just two days after CPDA filed its Counterclaims, TruCorps sent out yet another email entitled "Tragic Conceits," that – without naming CPDA directly – alleges that a "recklessly conceited host" improperly paid its canvassers. *See* Dalal Aff. at 3 ¶ 10 & Exhibit I thereto (5/3/19 email entitled "Tragic Conceits"). That email was sent to senior officers at CPDA. *Id.* TruCorps followed that up with yet *another* email at the end of May – this one attacking Make the Road for hiring counsel after it had been sued by TruCorps. *Id.* at 3 ¶ 11 & Exhibit J thereto (5/31/19 email entitled "How Many Lawyers Does It Take").

  C. <u>After a Brief Hiatus, TruCorps Resumes Sending Unauthorized Communications in August of 2019</u>.

CPDA is not presently aware of any unauthorized communications sent during the months of June and July. Due to this hiatus, CPDA mistakenly believed that perhaps TruCorps had finally decided to abide by the rules and cease sending unauthorized communications to CPDA. Sadly, this hope was short-lived. Beginning on August 3, 2019, TruCorps resumed its war against CPDA, sending an email to CPDA, its employees, two board members, and two funders of CPDA again accusing CPDA of misconduct. *Id.* at 4 ¶ 12 & Exhibit K thereto (8/3/19 email entitled "The

(Wrong) Losing Battle"). On August 21, 2019, TruCorps sent another ex parte communication to CPDA and its employees stating that CPDA sought arbitration in court proceedings so that it could hide its supposed wrongdoing. *Id.* at 4 ¶ 13 & Exhibit L thereto (8/19/19 email entitled "Transparency Matters"). That email was followed up just four days later by another one sent to multiple CPDA employees claiming that CPDA misused funds by distributing large amounts of funds to overhead "for themselves," and this was supposedly revealed in court filings. (It is not.) *See id.* at 4 ¶ 14 & Exhibit M thereto (8/23/19 email entitled "Fiscal Sponsor"). Four days after that, TruCorps sent yet another email entitled "Who's the Boss" to CPDA's senior staff, employees, and canvass directors alleging that CPDA and its affiliates failed to pay "hundreds of thousands of dollars in fees and taxes for 2018." *See id.* at 4 ¶ 15 & Exhibit N thereto (8/27/19 email entitled "Who's the Boss") at 1. That email further falsely claimed that W-2 statements were "not accurate," and directed employees and canvassers to contact CPDA. *Id.* at 2.

   D. <u>Incredibly, TruCorps Continues to Send Unauthorized Communications Even After Receipt of a Draft of this Motion in September of 2019</u>.

Left with no other choice, counsel for CPDA prepared a draft of this instant Motion. Although no case law prevented CPDA from filing it immediately, out of an abundance of caution and in a last-ditch effort to resolve things amicably, CPDA chose to treat this Motion procedurally as if it were a motion for sanctions pursuant to Fed. R. Civ. P. 11, and sent a courtesy copy to counsel for TruCorps with an opportunity to resolve the issues addressed therein. *See* Torrez Aff. at 2-3 ¶ 11 & Exhibits E (9/24/2019 letter from Torrez to Sandler), F (9/24/2019 Draft Motion for Sanctions) thereto. Counsel for TruCorps confirmed receipt of that draft Motion, but did not otherwise engage with or discuss the substance of that Motion in any way. *Id.* ¶ 11-14 & Exhibit G (9/24/2019 email from Sandler to Torrez).

TruCorps's response to this courtesy was to send *yet another unauthorized email* directly to CPDA's employees, this one titled "2018 TAX REVISIONS," insinuating that "CPD fails to provide current or accurate information," and directing CPDA employees and canvassers to "contact them [CPDA] directly."  Dalal Aff., at 5 ¶ 16 & Exhibit O thereto (9/28/2019 email entitled "2018 TAX REVISIONS") at 1.  Counsel for CPDA promptly notified counsel for TruCorps regarding this additional outrageous communication.  Torrez Aff. at 3 ¶ 13 & Exhibit H thereto (10/1/2019 email from Torrez to Sandler).  Counsel for TruCorps declined to respond.  *Id.* at 3 ¶¶ 13-14.

## CONCLUSION

CPDA is at the end of its rope.  The fifteen *ex parte* communications described herein were and are part of an ongoing effort by TruCorps to ruin CPDA's reputation in the community and with its employees and vendors, to spread malicious falsehoods, and to interfere with the economic relationships between those parties and CPDA.  Any *one* of these communications would be sufficient to warrant sanctions under Maryland law.  Taken together, these egregious and repeated violations plainly warrant sanctions sufficient to (a) compensate CPDA for the harm it has suffered; (b) deter future misconduct by TruCorps; and (c) maintain order and ensure the administration of justice.

CPDA has literally exhausted every effort to stop this conduct and comes to this court reluctantly as a matter of last resort having been rebuffed and ignored for months.

WHEREFORE, Defendant and Counterclaim Plaintiff CPDA respectfully requests that this Court grant the Motion and award the relief requested therein.

        Respectfully submitted,

        _____/s/_____
        P. Andrew Torrez (D.Md. Bar No. 27268)
        THE LAW OFFICES OF P. ANDREW TORREZ, LLC
        28 E. Susquehanna Ave., Suite 206
        Towson, Maryland 21286
        Phone: (240) 230-7309
        email:  patorrez@patorrez.com

        *Attorney for Defendant/Counterclaim Plaintiff*
        *CPDA Canvass Network, LLC*

Dated:  October 9, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October 2019, the foregoing Memorandum of Law in Support of Defendant's Motion for Sanctions was filed electronically via CM/ECF and electronic copies were served on counsel of record.

         */s/   P. Andrew Torrez*_____
        P. Andrew Torrez