**IN THE UNITED STATES DISTRICT COURT**
**<u>FOR THE DISTRICT OF MARYLAND</u>**
*Southern Division*

| | | |
|---|---|---|
| **COLLECTIVE SHARED** | * | |
| **SERVICES, LLC** | | |
| | * | |
| **Plaintiff/Counterclaim Defendant,** | | |
| **v.** | * | **Case No.: GJH-19-1208** |
| | | |
| **CPDA CANVASS NETWORK, LLC,** | * | |
| | | |
| **Defendant/Counterclaim Plaintiff.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Collective Shared Services, LLC ("Plaintiff") brought this action in Maryland state court against Defendant CPDA Canvass Network, LLC ("Defendant") seeking rescission of a contract in which Plaintiff agreed to provide payroll and human resources services to Defendant. ECF No. 1-2. Defendant removed the action to this Court and filed an Answer with four counterclaims. ECF Nos. 1, 5. Now pending before the Court are Plaintiff's Motion to Dismiss the counterclaims, ECF No. 8, Defendant's Motion for Sanctions against Plaintiff, ECF No. 11, and Plaintiff's Motion for Voluntary Dismissal of its claim, ECF No. 14. No hearing is necessary. *See* Loc. Rule 105.6. (D. Md.). For the following reasons, the Court will grant in part and deny in part the Motion to Dismiss the Counterclaims, grant in part and deny in part the Motion for Sanctions, and grant the Motion for Voluntary Dismissal of Plaintiff's claim.

## I. BACKGROUND[1]

Defendant is a nonprofit organization whose parent company, Center for Popular Democracy Action, is a nonprofit 26 U.S.C. § 501(c)(4) organization "that works to create equity, opportunity, and dynamic democracy in partnership with high-impact base-building organizations, organizing alliances, and progressive unions." ECF No. 5 ¶ 1. On March 5, 2018, Defendant entered into a contract (the "Contract") retaining Plaintiff "to provide certain human resource functions for a multi-state canvass for community education and public outrage, including in connection with the 2018 midterm elections." *Id.* ¶¶ 2, 5. Specifically, Plaintiff agreed to assume responsibility as the "administrative employer" of canvassers employed by Defendant in Florida, Nevada, Arizona, Colorado, Pennsylvania, Michigan, and North Carolina. *Id.* ¶ 7; ECF No. 1-4 at 4.[2] Plaintiff's duties under the Contract included paying wages of the employees in amounts reported by Defendant, making all required deductions and withholdings for taxes, providing and administering health and welfare benefits and workers' compensation coverage, and administering unemployment insurance. ECF No. 1-4 at 4–5.

Defendant alleges that Plaintiff failed to perform its obligations under the Contract from the beginning of the relationship. ECF No. 5 ¶ 6. Specifically, though the Contract required Plaintiff to invoice Defendant at least five business days before each employee payday, Plaintiff failed to provide timely and accurate invoices and required supporting information. *Id.* ¶ 7–8. Defendant repeatedly but unsuccessfully requested appropriate detail for the invoices. *Id.* ¶ 8. Plaintiff instead threatened not to pay the canvassers unless Defendant wired money to Plaintiff; Defendant complied to ensure essential work was completed. *Id.* ¶ 9. On August 21, 2018, the

[1] Unless otherwise stated, these facts are taken from Defendant's counterclaim pleading, ECF No. 5, and the documents attached and integral to that pleading. They are presumed to be true.
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to page numbers generated by that system.

2

parties executed a rider to the Contract clarifying that Defendant's obligations to pay Plaintiff would arise "within two weeks of receiving correct invoices, and only after receiving correct invoices from [Plaintiff]." *Id.* ¶ 10 (quoting ECF No. 1-4 at 10). Despite the rider, Plaintiff continued to fail to provide Defendant with correct invoices with appropriate supporting documentation. *Id.* ¶ 11.

In September 2018, Plaintiff failed to pay Defendant's canvassers, many of whom then did not report to work. *Id.* ¶ 12. Plaintiff's principal, Duane Stillwell, admitted that this kind of problem had occurred "in the past." *Id.* ¶¶ 3, 13.[3] In connection with another contract with Defendant and its affiliates, Stillwell offered to conduct an automated recorded phone call to canvassers apologizing for the error, admitting that neither Defendant nor its affiliates were at fault in the failure to pay canvassers. *Id.* ¶ 13. Although the call was undertaken, Plaintiff nonetheless failed to pay canvassers in the following pay period and again the following week. *Id.* ¶ 14. By September 24, 2018, Plaintiff had failed to pay more than a dozen of Defendant's canvassers for three consecutive weeks. *Id.* Defendant asserts that Plaintiff's failures materially damaged Defendant's operations by causing the resignation of nearly 50 canvassers, a city-wide "sick out" in a Philadelphia office, and a strained relationship between Defendant and its affiliates working with canvassers. *Id.* ¶ 15.

On September 25, 2018, Stillwell admitted that Plaintiff had failed to meet Defendant's needs and offered to find alternative solutions. *Id.* ¶ 16. By October 2018, however, Plaintiff had failed to pay canvassers in multiple states and refused to fulfill its obligations under the Contract. *Id.* ¶ 17. In response to requests by Defendant that Plaintiff perform its duties under the Contract, Plaintiff demanded that Defendant provide additional information in a new "portal" system that

---

[3] In a disclosure pursuant to Local Rule 103.3, Plaintiff stated that its sole member is Stillwell and that it is affiliated with the entities Direct Opportunity Group, LLC d/b/a TruCorps and TruCorps, LLC. ECF No. 7 at 1–2.

was not part of the Contract and which Defendant did not fully know how to use. *Id.* Plaintiff also demanded that Defendant wire it additional funds. *Id.* On October 12, 2018, through its counsel, Plaintiff purported to terminate the Contract; in response, Defendant again requested invoices and supporting documents, which Plaintiff failed to provide. *Id.* ¶ 18. Defendant alleges generally that Plaintiff failed to provide W-2 forms to certain canvassers hired pursuant to the Contract, failed to administer health insurance and welfare benefits for the canvassers to whom such benefits applied, and fully failed to report and remit federal and state payroll taxes on all wages paid to Defendant's canvassers. *Id.* ¶¶ 19–21.

On February 11, 2019, Defendant's counsel informed Plaintiff's counsel that Defendant was represented and that all communications related to the Contract should be directed to Defendant's counsel. *Id.* ¶ 22 (citing ECF No. 5-1). In spite of that notification, Stillwell disseminated various emails and social media communications to employees and vendors of Defendant, in his own name or using the name TruCorps, making various allegations of misconduct by Defendant and its affiliates. *Id.* ¶ 23 (citing ECF No. 5-2). These include that Defendant and its affiliates "failed and refused to pay payroll-related costs since last October," "paid no one but themselves," "misled [Plaintiff] from the outset about their ability to provide necessary information and provide needed funds to take proper care of project staff," "actually and intentionally interfered with the process and refused to help solve problems that they created," and "[have] done real harm to real people" necessitating that they be "held accountable." ECF No. 5-2.

Defendant alleges that Plaintiff obtained nonpublic email addresses of Defendant's employees and canvassers pursuant to the Contract, which were considered confidential information under the Contract, and used them to disseminate the email messages about

Defendant. ECF No. 5 ¶¶ 24–25. On March 15, 2019, Defendant's counsel sent an additional letter to Plaintiff's counsel reiterating the request that all correspondence between Plaintiff and Defendant be directed to Defendant's counsel. *Id.* ¶ 26 (citing ECF No. 5-3). Nonetheless, Plaintiff continued to contact Defendant's employees, vendors, and others with emails and social media communications making allegations about Defendant's conduct relating to the Contract. *Id.* ¶ 27 (citing ECF No. 5-4).

Plaintiff filed its Complaint against Defendant in the Circuit Court for Montgomery County, Maryland on March 11, 2019, seeking rescission of the Contract. ECF No. 1-2. Defendant removed the action to this Court on April 24. ECF No. 1. On May 1, Defendant filed an Answer to the Complaint and counterclaims against Plaintiff for breach of contract, unjust enrichment, defamation, and tortious interference. ECF Nos. 5, 5-1. On May 22, Plaintiff filed a Motion to Dismiss the Counterclaims for failure to state a claim. ECF No. 8. Defendant filed its response on June 4, ECF No. 9, and Plaintiff replied on June 18, 2019, ECF No. 10.

On October 9, 2019, Defendant filed a Motion for Sanctions against Plaintiff, ECF No. 11, seeking an injunction barring Plaintiff from further communicating with Defendant, as well as judgment for Defendant on some of its counterclaims and injunctive relief supporting the damages Defendant seeks. Plaintiff filed an Opposition to the motion on October 23, ECF No. 13, and a motion to voluntarily dismiss its claim for rescission on November 1, ECF No. 14. Defendant submitted a Reply in support of sanctions on November 6, 2019, and a response to the voluntary dismissal motion on November 15, 2019, ECF No. 16. Plaintiff replied in support of voluntary dismissal on November 27, 2019. ECF No. 17.

## II.    STANDARD OF REVIEW

To state a claim that survives a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a claim has crossed "the line from conceivable to plausible," the Court must employ a "context-specific" inquiry, drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570). The Court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court must "draw all reasonable inferences in favor of the plaintiff." *Id.* at 253 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). "[B]ut [the Court] need not accept the legal conclusions drawn from the facts, and . . . need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Id.* (first alteration in original) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

"Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to

the complaint as exhibits . . . .'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)).

## III.    DISCUSSION

The Court first addresses Plaintiff's motion for voluntary dismissal of its claim before turning to the Motion to Dismiss and finally the sanctions motion. Because some but not all of Plaintiff's arguments for dismissal of the counterclaims have merit, Plaintiff's Motion to Dismiss will be granted in part and denied in part. Defendant's Motion for Sanctions will be granted to the extent that Plaintiff will be barred from further communications with Defendant and its employees and affiliates about the subject matter of this litigation.

### A.  Motion for Voluntary Dismissal

Pursuant to Federal Rule of Civil Procedure 41(a)(2), Plaintiff has moved to voluntarily dismiss without prejudice its claim for rescission of the Contract. ECF No. 14. Rule 41(a)(2) provides that "[i]f a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." "The general rule is that '[a] plaintiff's motion to voluntarily dismiss a claim should not be denied absent plain legal prejudice to the defendant,'" *Lang v. Mfrs. & Traders Tr. Co.*, 274 F.R.D. 175, 181 (D. Md. 2011) (alteration in original) (quoting *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001), "or 'substantial prejudice to the defendant,'" *id.* (quoting *Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir. 1986)).

Defendant does not dispute that the Court would retain jurisdiction over its counterclaims if Plaintiff's claim were dismissed and "does not object to granting Plaintiff the relief it seeks,"

but does raise the possibility of "potential prejudice" to Defendant. ECF No. 16 at 1.[4] In short, Defendant argues that if Plaintiff were to refile its claim in state court, that would "forc[e] Defendant to incur unnecessary additional expenses in *re*-removing any future pleadings back to this Court" and would be sanctionable conduct under Rule 11. *Id.* at 2. If the Court grants Plaintiff's motion, Defendant requests an order barring Plaintiff from refiling "the claims raised in its Complaint, or any similar claims" in state court and instead requiring that any such claims be filed in this Court. *Id.* at 4. Defendant further requests that the Court enter an order directing Plaintiff to pay Defendant's legal fees if Plaintiff violates those conditions. *Id.* at 5.

As Plaintiff correctly responds, Defendant's assertion of prejudice is without merit and its requested conditions lack basis or justification. ECF No. 17 at 1. If Plaintiff were to refile its claim in state court, nothing would "force" Defendant to remove it to this Court. Defendant has identified no prejudice in the hypothetical situation of litigating two suits at once, and "[i]t is well-established that our dual system of federal and state governments allows for parallel litigation." *AMEX Assur. Co. v. Giordano*, 925 F. Supp. 2d 733, 737 (D. Md. 2013); *see also Davis v. USX Corp.*, 819 F.2d 1270, 1274 (4th Cir. 1987) ("It is well established that, for purposes of Rule 41(a)(2), prejudice to the defendant does not result from the prospect of a second lawsuit."). Additionally, the Court is unmoved by Defendant's claim that removing a refiled complaint would require significant resources, particularly because the Notice of Removal Defendant has already prepared in this case, ECF No. 1, would presumably need few

---

[4] With respect to the Court's jurisdiction over the counterclaims, it bears mentioning that the counterclaim pleading does not explicitly allege a basis for subject matter jurisdiction in this Court. Defendant's Notice of Removal, however, asserts that the Court has diversity jurisdiction over Plaintiff's claim for rescission pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000. ECF No. 1 ¶ 9. Defendant points specifically to a provision in the Contract rider requiring that it tender a $98,051 security deposit to Plaintiff in connection with the parties' respective payroll responsibilities. ECF No. 1 ¶ 8 (citing ECF No. 1-4 at 10). In light of the Notice of Removal's representations and the Contract rider, the Court is satisfied that it has subject matter jurisdiction over Defendant's counterclaims.

changes to be reused in a subsequent suit. For these reasons, the Court will decline Defendant's request for conditions and grant Plaintiff's motion to voluntarily dismiss its claim.

### B. Motion to Dismiss Counterclaims

Defendant asserts counterclaims of breach of contract, unjust enrichment, defamation, and tortious interference. ECF No. 5. Because the parties' briefing addresses the breach and unjust enrichment claims together, the Court does so as well before turning to the remaining counterclaims.

#### 1. Breach of Contract and Unjust Enrichment

Defendant's first counterclaim alleges that Plaintiff materially breached the Contract by failing to perform duties it sets forth, including reporting and paying federal and state taxes, properly invoicing Defendant with adequate supporting documents, paying Defendant's employees and providing them with health insurance and W-2 forms, and not using Defendant's confidential information, including nonpublic email addresses, except as authorized by the Contract. ECF No. 5 ¶¶ 30–32. The second counterclaim seeks restitution damages for unjust enrichment, alleging that Defendant has conveyed benefits on Plaintiff by paying it deposits and retainers that Plaintiff has refused to return upon demand. *Id.* ¶¶ 35, 37, 39, 40.

Plaintiff moves to dismiss both of these claims on the ground that a party generally may not bring an unjust enrichment claim when the subject matter of the claim is covered by an express contract between the parties. ECF No. 8-1 at 4–5 (citing *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000)). Plaintiff acknowledges the exception to this rule that a claimant "may plead in the alternative by asserting claims for unjust enrichment and breach of contract" if the claimant alleges fraud or bad faith in the formation of the contract, but argues that Defendant has made no such allegation here. *Id.* at 4–5 (citing *J.E.*

*Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 608 (D. Md. 2015)). As

Defendant correctly responds, ECF No. 9 at 4, however, there is an additional exception that

"although [a party] may not recover under both contract and quasi-contract theories, it is not

barred from pleading these theories in the alternative where the existence of a contract

concerning the subject matter is in dispute." *J.E. Dunn. Constr. Co.*, 115 F. Supp. 3d at 608

(quoting *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792

(D. Md. 2002)).

     Because the Court will grant Plaintiff's motion to dismiss its rescission claim, the

existence of the contract is no longer disputed by either party. Accordingly, Defendant cannot

plead breach and unjust enrichment in the alternative under this exception. Nor can Defendant

plead in the alternative under the bad faith or fraud in formation exception. In supporting this

argument, Defendant can point only to its allegations in the counterclaim pleading that Plaintiff

"used its own failures to invoice [Defendant] properly as justification for refusing to pay

canvassers as required by the contract," and that Defendant was "held hostage" by Plaintiff and

forced to wire it additional money to ensure that critical work was completed. ECF No. 9 at 6

(quoting ECF No. 5 ¶¶ 7, 9). As Plaintiff notes in its Reply, these allegations are facially

inadequate because they address Plaintiff's *performance* of the Contract, not the Contract's

*formation*. ECF No. 10 at 5–6. Accordingly, this exception is not available to Defendant either.

     Nonetheless, the Court will not dismiss the Breach of Contract claim but only the unjust

enrichment claim. "It is settled law in Maryland, and elsewhere, that a *claim for unjust

enrichment* may not be brought where the subject matter of the claim is covered by an express

contract between the parties." *Cty. Comm'rs of Caroline Cty.*, 747 A.2d at 607 (quoting *FLF,

Inc. v. World Publ'ns, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998)) (emphasis added). That an

unjust enrichment claim must be dismissed when an express contract exists does not also require

dismissal of claims for breach of that contract. *See J.E. Dunn. Constr. Co.*, 115 F. Supp. 3d at

608; *United States v. EER Sys. Corp.*, 950 F. Supp. 130, 133–34 (D. Md. 1996). Because

Plaintiff has raised no other ground for dismissal of Defendant's breach claim, that claim may

proceed.

### 2. Defamation

Plaintiff moves to dismiss Defendant's counterclaim for defamation. "To state a claim for

defamation in Maryland, a plaintiff must plead the following four elements: '(1) that the

defendant made a defamatory statement to a third person, (2) that the statement was false, (3)

that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby

suffered harm.'" *Lora v. Ledo Pizza Sys., Inc.*, No. DKC 16-4002, 2017 WL 3189406, at *8 (D.

Md. July 27, 2017) (quoting *Offen v. Brenner*, 935 A.2d 719, 723–24 (Md. 2007)). "Maryland

courts recognize a difference between defamation *per se* and defamation *per quod*: 'In the case

of words or conduct actionable *per se*, their injurious character is a self-evident fact of common

knowledge of which the court takes judicial notice and need not be pleaded or proved. In the case

of words or conduct actionable only *per quod*, the injurious effect must be established by

allegations and proof of special damage and in such cases it is not only necessary to plead and

show that the words or actions were defamatory, but it must also appear that such words or

conduct caused actual damage.'" *Groom v. Bombardier Transp. Servs. USA Corp.*, No. MJG-16-

2624, 2017 WL 4947014, at *5 (D. Md. Oct. 31, 2017) (quoting *Samuels v. Tschechtelin*, 763

A.2d 209, 244 (Md. App. 2000)). "Whether an alleged defamatory statement is *per se* or *per

quod* is a question of law for the court." *Id.* (quoting *Samuels*, 763 A.2d at 244–45).

Plaintiff argues that Defendant's counterclaim raises statements that only qualify as defamation *per quod* and that Defendant fails to plead the special damages required for such a claim. ECF No. 8-1 at 5–6. Plaintiff ignores, however, that "[a] statement which disparages the business reputation of a plaintiff is one of the categories traditionally considered to be defamation *per se*." *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 843 (D. Md. 2005) (citing Restatement (Second) of Torts §§ 570, 573; 50 Am. Jur. 2d *Libel & Slander* § 141 (2004)). As the Maryland Court of Special Appeals explained in *Samuels v. Tschechtelin*, a defamatory statement that impairs another's livelihood or "adversely affects [the person's] fitness for the proper conduct of his business . . . [is] actionable *per se*." 763 A.2d at 245 (second alteration in original) (quoting *Leese v. Baltimore Cty.*, 497 A.2d 159, 175 (Md. App. 1985)). *Samuels* relied in part on the Maryland Court of Appeals' 1902 decision in *Kilgour v. Evening Star Newspaper Co.*, which states that "to say or publish of a merchant anything that imputes insolvency, inability to pay his debts, the want of integrity in his business, or personal incapacity or pecuniary inability to conduct it with success, is slanderous or libelous per se if without justification." 53 A. 716, 716 (Md. 1902) (quoting *Newbold & Sons v. The J.M. Bradstreet & Son*, 57 Md. 38, 53 (1881)).

Defendant's counterclaim pleading reproduces only the specific statement by Plaintiff that Defendant "paid no one but themselves." ECF No. 5 ¶ 23. But the counterclaim makes clear that that statement is just an example and indicates that additional statements are attached to the pleading. *See id.* This includes an email from Stillwell stating that Defendant: "has failed and refused to pay payroll-related costs"; "misled [Plaintiff] from the outset about their ability to provide necessary information and provide funds to take proper care of project staff"; "intentionally interfered with the process and refused to help solve problems that they created";

and "has done real harm to real people." ECF No. 5-2. Additional statements in another email include that Defendant: "didn't much care" whether payroll obligations were met; "repeatedly made late payroll-cover payments"; "misled about their ability to provide needed information and to make payments"; "failed to make a number of required payments at all"; had "insidious attitudes"; failed to take "responsib[ility] for missteps"; and doesn't "actually care." ECF No. 5-4.

These statements, which Defendant alleges were made in emails to Defendant's vendors and others, ECF No. 5 ¶¶ 23, 42, serve to impugn Defendant's business reputation and charge that it operates in an incompetent and professionally dishonest manner. Defendant has therefore alleged statements that are defamatory *per se*; accordingly, Defendant need not plead special damages. Defendant also satisfies the remaining elements required for a defamation claim. The counterclaim pleading asserts that these statements are false, *id.* ¶¶ 23, 42, 44, 46–48, that Plaintiff is legally at fault, *id.* ¶¶ 45–47, and that Plaintiff has suffered economic loss resulting from harm to its character, reputation, and community standing, as well as to its relationships with employees and third-party vendors, *id.* ¶ 48. *See Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365–66 (D. Md. 2017) (detailing the elements of the defamation claim).

In its Reply to Defendant's Opposition, Plaintiff argues that the statements Defendant listed are protected expressions of opinion that do not state or imply verifiable facts and therefore are not actionable. A statement is not defamatory if "it cannot reasonably be interpreted as stating 'actual facts' about an individual that are 'provably false.'" *Doe*, 274 F. Supp. 3d at 369 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998)). Generally, "a statement is not actionable unless it asserts a provably false fact or factual connotation." *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d

697, 702 (D. Md. 2000). However, "[a]n unsupported opinion that implies defamatory facts, like

"'[i]n my opinion Jones is a liar," can cause as much damage to reputation' and may be just as

actionable 'as the statement, "Jones is a liar."'" *Biospherics, Inc.*, 151 F.3d at 183 (second

alteration in original) (quoting *Milkovich*, 497 U.S. at 19). "In determining whether a statement

could be reasonably interpreted as an assertion of fact," courts have looked to "whether it was

'loose, figurative, or hyperbolic language which would negate the impression that the writer' was

stating fact—and the context and 'general tenor'" of the writing. *Id.* at 184 (quoting *Milkovich*,

497 U.S. at 21).

According to Plaintiff, the statements Defendant cited do not contain or imply provably

true or false facts and use loose, figurative, or hyperbolic language. ECF No. 9 at 10. Plaintiff

points specifically to the statements that Defendant "misled [Plaintiff]," "intentionally interfered

with the process," "refused to help solve problems they created," "has done real harm to real

people," "didn't care about whether payroll obligations were met," "misled about their ability to

provide needed information," "had an insidious attitude," was "responsible for missteps," and

"doesn't actually care." ECF No. 10 at 9. This argument misses the mark. Several of these

statements assert that Defendant took specific actions in the course of its relationship with

Plaintiff that were hostile, reckless, or incompetent, and that they had damaging impacts on the

canvassers. Further, the context of the statements indicates that the emails were meant to relate

Stillwell's actual experiences working with Defendant. Whether Defendant took the actions

Stillwell described and alluded to is a matter of provable fact. Accordingly, Plaintiff's motion to

dismiss the defamation claim will be denied.

### 3. Tortious Interference

Plaintiff finally moves to dismiss Defendant's tortious interference claim on the ground that Defendant has failed to adequately allege damages. "The tort of intentional interference with contractual or business relations is 'well-established in Maryland.'" *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 569 (D. Md. 2019) (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 116 (Md. 1994)). "A claim for intentional interference with contractual or business relations requires the following elements: '(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.'" *Id.* (quoting *Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010)). "The tort of tortious interference has 'two general manifestations.'" *Id.* (quoting *Macklin*, 629 A.2d at 116). "The first manifestation is often described as 'inducing the breach of an existing contract,' and the second, 'more broadly, constitutes maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract.'" *Id.* (quoting *Blondell*, 991 A.2d at 97).

Defendant's counterclaim asserts that though Defendant advised Plaintiff of Defendant's contractual relationships with canvassers and vendors, Plaintiff contacted those employees and vendors intending to interfere with those relationships by means of false and intentionally damaging statements about who was at fault for the failure to pay the canvassers. ECF No. 5 ¶¶ 50–53. These allegations meet the first three elements of the claim, which Plaintiff does not contest. Instead, Plaintiff challenges as inadequate Defendant's damages allegation, which asserts that "As a result of the conduct of [Plaintiff], [Defendant] has suffered economic loss and damage to its reputation and standing in the community, and [Defendant] will continue to suffer

other consequential damages and harm to reputation." ECF No. 5 ¶ 54. Plaintiff argues that this allegation is simply a formulaic recitation of the required harm and is therefore insufficient to state a claim. ECF No. 8-1 at 8.

Defendant claims that "[t]hese kinds of allegations are sufficient allegations of actual damage and loss under Maryland law." ECF No. 9 at 11. In support, Defendant cites *Redmonds Enterprise v. Transportation, Inc.*, No. CCB-16-3943, 2017 WL 2335598, at *5 (D. Md. May 30, 2017). The court there found sufficient allegations that the plaintiff had lost approximately $6,000 per month in business with identified contractors, who had specifically told the plaintiff's CEO that they could not do business with him because of the defendant's communications. *See id.* at *4–*5. That level of quantified and specific detail is plainly lacking here. Further, a tortious interference plaintiff generally "must demonstrate that the defendant 'caused the destruction of the business relationship which was the target of the interference.'" *Chattery Int'l, Inc. v. Jolida, Inc.*, No. WDQ–10–2236, 2011 WL 1230822, at *12 (D. Md. Mar. 28, 2011) (quoting *Med. Mut. Liab. Soc. of Md. v. B. Dixon Evander & Assocs., Inc.*, 660 A.2d 433, 439 (Md. 1995)). Defendant has not so shown here. The Court will therefore grant Plaintiff's motion to dismiss Defendant's tortious interference claim.

### C. Motion for Sanctions

The Court finally turns to Defendant's Motion for Sanctions against Plaintiff. ECF No. 11. Defendant brings the motion not under Federal Rule of Civil Procedure 11, but instead appeals to the Court's inherent authority to sanction conduct inconsistent with the orderly administration of justice. ECF No. 12 at 3 (citing *Projects Mgmt. Co. v. Dyncorp Int'l*, 734 F.3d 366, 375 (4th Cir. 2013)). The conduct that Defendant maintains merits sanctions is a series of emails that Stillwell or TruCorps sent to Defendant's officers, employees, volunteers, and

vendors, beyond those raised in Defendant's counterclaims, that broadly concern the subject of this case, despite repeated demands by Defendant's counsel that any such contact be directed solely to counsel. *Id.* at 2, 4–9. Defendant maintains in its motion, which offers affidavits in support, that these messages were *ex parte* communications to a represented party in violation of Maryland Attorneys' Rule of Professional Conduct 19-304.2(a). That rule provides that except in certain cases involving government officials, "in representing a client, an attorney shall not communicate about the subject of the representation with a person who the attorney knows is represented in the matter by another attorney unless the attorney has the consent of the other attorney or is authorized by law or court order to do so."

Plaintiff correctly responds that while this Court has sanctioned parties for violating that rule, *see, e.g.*, *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 753–54 (D. Md. 1996), the text of the rule only prohibits communications with represented parties by *attorneys*, not by their clients. ECF No. 13 at 1–3. Plaintiff points to *Dorsey v. The Home Depot U.S.A., Inc.*, 271 F. Supp. 2d 726 (D. Md. 2003), in which Judge Messitte cited the predecessor to Rule 19-304.2(a) in explaining that "[n]othing in the law prohibits litigants or potential litigants from speaking among and between themselves, as opposed to attorneys for such parties attempting direct communications with represented parties." *Id.* at 730.[5] In its reply, Defendant appears to concede this point by retreating to its arguments premised on the Court's inherent authority. ECF No. 15.

Although Plaintiff is correct that Rule 19-304.2(a) does not expressly bar its conduct, the Court finds that some degree of relief is warranted under the Court's inherent authority because Plaintiff's communications with Defendant – which have continued even as the parties have

---

[5] Plaintiff also briefly claims that Defendant's motion is improper because Plaintiff is not the sender of the messages, which it states was sent by Duane Stillwell as principal and member of TruCorps. ECF No. 13 at 1. This argument is unconvincing because, by Plaintiff's admission in its Local Rule 103.3 disclosure form, Stillwell is the sole member of Plaintiff, and TruCorps has a financial interest in this litigation. *See* ECF No. 7 at 1–2.

briefed this motion for sanctions – are gratuitous, harassing, and obstructive of the Court's adjudication of the case. To briefly review the history and content of the communications, Defendant's counsel first informed Plaintiff's counsel on February 11, 2019, five days after Defendant retained its current counsel, that all communications regarding this dispute should be directed to counsel. ECF No. 12-1 ¶ 3; *id.* at 6. Defendant's counsel sent an additional letter with the same demand on February 25, 2019. ECF No. 12-1 ¶ 5; *id.* at 8. Despite these requests, Plaintiff sent an email in late February or early March to Defendant's employees and volunteers making the allegations at issue in Defendant's counterclaims and stating that Plaintiff was planning to take legal action. ECF No. 12-1 ¶ at 10, 13. The allegations included that "[Defendant] has failed and refused to pay payroll-related costs since last October," "paid no one but themselves," "misled [Plaintiff] from the outset," and "actually and intentionally interfered with the process and refused to help solve problems that they created." *Id.* at 13.

On March 11, 2019, Plaintiff filed this action in Maryland state court. ECF No. 1-2. On March 15, Defendant's counsel sent a third letter to Plaintiff's counsel demanding that counsel direct Plaintiff to cease all of its communications with Defendant. ECF No. 12-1 at 10. Plaintiff instead began a campaign of emails to Defendant's employees that discussed in belligerent terms the dispute about which it had just filed suit. ECF No. 12-2 ¶¶ 2–16. Written as either newsletter-style mass messages or directly addressed letters, the emails included a barrage of allegations about conduct by Defendant at issue in this litigation, all stated in a hostile and disparaging manner. A March 22, 2019 email accused Defendant of "money handling" that was "more than suspect" and of having "insidious attitudes" with respect to its purported debt to Plaintiff. ECF No. 12-2 at 7–9. A March 27 message accused Defendant of advancing a "false or reckless narrative" about the debt, *id.* at 15, and an April 3 email asked Defendant "How will you further

justify your shameful conduct to donors, affiliates, and others this month"? *Id.* at 19. An April 16 message asserts that Defendant is guilty of "non-profit payroll larceny" and "massive abuse" of its relationship with Plaintiff. *Id.* at 28–29. Other emails addressed additional alleged misconduct by Defendant that appears to be beyond the scope of this action, though the messages were written with the same tone and sent to Defendant in the same manner. *See id.* at 32–33, 35, 39–40, 41–43, 45–48, 50–51, 55–56, 59–60, 63–64. Defendant filed its motion for sanctions on October 9, 2019, following a message on September 28 alleging that Defendant has unlawfully attempted to avoid collecting and paying employment taxes. *Id.* at 63.

What elevates Plaintiff's conduct to a level necessitating a Court response is that after Defendant submitted the sanctions motion, Plaintiff turned its message campaign to specifically mocking Defendant and the motion. In an October 14, 2019 email titled "Paying By the Joke?", Plaintiff quoted the opening of Defendant's motion, which states that Defendant has attempted to "work amicably" to stop Plaintiff's unwanted communications. ECF No. 15-1 at 5. Plaintiff then wrote "Um. No. So this is basically crying to Dad to make it stop. 'No fair, Dad!'" *Id.* Plaintiff then quoted another passage of the motion stating that Defendant has "exhausted every effort to stop this conduct" after "having been rebuffed and ignored for months." *Id.* Plaintiff then wrote:

> Um. No. No effort and no rebuffing. And this is simply not the kind of 'safe space' we all respect. This is a public battle over a failure to pay what's owed. Can't hide. Though the donor-paid lawyers are certainly willing to try. Here's a thought: just pay us what you owe; to us or the state, it doesn't much matter. Or keep using donor money to have amateur comedians whine.

*Id.* A postscript to the message states that "[t]his information is from the latest filing by [Defendant's] lawyers in [this case]. You're welcome to a copy upon request. It's important that these kinds of statements be public." *Id.*

Additionally, in an October 24, 2019 email with the subject line "WHINING IS NOT WINNING," Plaintiff stated:

> Yeah. Maybe we're being a little rough on [Defendant]. But wait'll the IRS gets a hold of them. Two weeks ago, [Defendant] filed another expensive motion in court. Pointless, but expensive nonetheless; funded by donations. This one was special though because: (a) in case you haven't seen all the relevant emails on this dispute, the filing contained copies of most; and, (b) the filing quite literally cried to the judge to make the transparency stop.
> . . .
> You can see the entire [Defendant] pleading below. (It's [sic] seems appropriate that these kinds of filings are actually called 'pleadings'.) Our response was filed yesterday. The key point is that [Defendant] cannot win on this silly motion. Nor on anything related to their misdeeds here. But they are intent on spending donor money to hide - and cry. It's unseemly. There's no crying in the honest fight for transparency and justice.

*Id.* at 7. The message attached an image of the first page of Defendant's memorandum in support of its motion for sanctions, below which is text stating that "The entire sob story is available" at hyperlinks that follow. *Id.* at 8.

These messages – sent while Defendant's motion has been pending – display a flippant and contemptuous attitude toward this proceeding and the Court. Importantly, while the Maryland Rules permit parties to communicate directly with other counseled parties, the purpose of that exception is to avoid chilling interactions that could lead to or accelerate settlement of disputes. *Att'y Grievance Comm'n of Md. v. Tyree*, 118 A.3d 980, 991 (Md. 2015); *see also N.W. Bypass Grp. v. U.S. Army Corps of Eng'rs*, 488 F. Supp. 2d 22, 29 (D.N.H. 2007) (noting that contact among parties is encouraged as a means of facilitating settlement). The rule does not grant license to wage harassment campaigns against a party's litigation opponent in parallel to proceedings in court, particularly when the harassing party also initiated the litigation.

Plaintiff attempts to characterize its messages as "legitimate private comments" to Defendant that "conveyed information that the recipients needed to know," including by

"warn[ing] [Defendant] about legal risks to its affiliates from failure to properly classify employees and/or cover payroll taxes." ECF No. 13 at 2. Even if this description were accurate, that Plaintiff persisted in sending these "private comments" directly to Defendant, despite being advised three times that Defendant's counsel was the proper recipient, rebuts a claim of good faith and honest intent, as does the fact that the messages were sent, in Plaintiff's words, as part of a "public battle." ECF No. 15-1 at 5. Further, Plaintiff nowhere denies that its counsel has been fully aware of the emails, if not directly involved in preparing them. The Court finds it especially difficult to believe that Plaintiff's counsel had no role in crafting a message that purports to advise Plaintiff's current litigation opponent about the opponent's "legal risks." ECF No. 13 at 2. To be clear, there is insufficient evidence to find that Plaintiff's counsel has violated Rule 19-304.2(a), or Rule 19-308.4(a), which prohibits violating professional conduct rules through the acts of another. But the evidence that Defendant has presented persuades the Court that temporary, narrow restrictions on Plaintiff's communications are appropriate to issue under the Court's inherent authority. *See Projects Mgmt. Co.*, 734 F.3d at 375; *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461–62 (4th Cir. 1993).

As stated in the Order accompanying this Memorandum Opinion, Plaintiff and its affiliates and employees, including Duane Stillwell, shall be ordered to cease communicating with Defendant or its affiliates or employees by postal mail, email, social media, or other format, about any matter at issue in this litigation. Plaintiff shall interpret the scope of the Court's Order broadly to include matters that may not be discussed in this Memorandum Opinion but which Plaintiff in good faith understands to be elements or components of its dispute with Defendant or its employees or affiliates. This restriction on Plaintiff's communications shall remain in force until the Clerk of this Court has closed this case. All additional relief sought in Defendant's

Motion for Sanctions will be denied without prejudice to Defendant's right to renew its Motion should Plaintiff fail to comply with the Court's order.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants the Motion for Voluntary Dismissal of Plaintiff's claim, grants in part and denies in part the Motion to Dismiss the Counterclaims, and grants in part and denies in part the Motion for Sanctions. Defendant's counterclaims for unjust enrichment and tortious interference are dismissed, but its counterclaims for breach of contract and defamation may proceed. A separate Order shall issue.


Date: <u>March 20, 2020</u>                                                /s/_____
                                                                                    GEORGE J. HAZEL
                                                                                    United States District Judge