# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>COLLECTIVE SHARED SERVICES, LLC,</td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td>Case No.: GJH-19-1208</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>CPDA CANVASS NETWORK, LLC,</td><td>*</td><td></td></tr>
<tr><td>Defendant.</td><td>*</td><td></td></tr>
</table>

\* \* \* \* \* \* \* \* \* \* \* \* \*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>COLLECTIVE SHARED SERVICES, LLC,</td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Case No.: GJH-20-1804</td></tr>
<tr><td>CPDA CANVASS NETWORK, LLC, <em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This consolidated action involves claims and counterclaims by and between Plaintiff Collective Shared Services, LLC ("CSS"), and CPD Action Canvass Network, LLC ("CPDA Canvass") and Center for Popular Democracy Action Fund, Inc. ("CPDA") (collectively, "Defendants") stemming from a contract between the parties in which CSS agreed to provide payroll and human resources services to CPDA Canvass. ECF No. 1-2; Case No. GJH-20-1804, ECF No. 10.[1] Now pending before the Court is Defendants' Motion to Dismiss. ECF No. 26;

---

[1] Unless otherwise indicated, citations to documents filed on the Court's electronic filing system (CM/ECF) refer to documents filed in Case No. GJH-19-1208.

Case No. GJH-20-1804, ECF No. 11.[2] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018).

For the following reasons, Defendants' Motion to Dismiss is granted, in part, and denied, in part.

## I.      BACKGROUND

### A.      Factual Background[3]

CPDA Canvass is a limited liability company whose parent company, CPDA, is a

nonprofit corporation. Case No. GJH-20-1804, ECF No. 10 ¶¶ 2–5. Both CPDA Canvass and

CPDA "purport[] to carry out door-to-door canvasses to organize citizen support for progressive

causes and organizations, including other[] nonprofit organizations based throughout the

country[.]" *Id.* ¶¶ 2, 6. On March 5, 2018, CPDA Canvass entered into a contract (the

"Contract") retaining CSS  to "assume responsibility as administrative employer of certain

individuals working as canvassers for CPDA-sponsored projects[.]" *Id.* ¶ 11. CSS's duties under

the Contract included making wage and salary payments in amounts reported by CPDA Canvass,

determining and remitting taxes under applicable law, providing and administering health and

welfare benefits, providing workers' compensation coverage, and paying unemployment

insurance premiums. *Id.* ¶¶ 12, 13; *see also* Case No. GJH-20-1804, ECF No. 8-1 at 2–3.[4] CPDA

Canvass's duties under the contract included: (1) providing timely and accurate information to

CSS about CPDA Canvass's workers, which, according to CSS, included documents required to

---

[2] Prior to the Court granting the parties' request to consolidate, CPDA Canvass and CPDA filed the Motion to Dismiss at issue here in both cases. ECF No. 26; Case No. GJH-20-1804, ECF No. 11. The Motion, however, requests the dismissal of CSS's claims as contained in the Amended Complaint filed in Case No. GJH-20-1804. *See* Case No. GJH-20-1804, ECF No. 10 (Amended Complaint).

[3] Unless otherwise stated, the background facts are taken from the Amended Complaint CSS, ECF No. 10, filed in Case No. GJH-20-1804, and are presumed to be true. The Court notes, however, that both ECF No. 8 and ECF No. 10, filed in Case No. GJH-20-1804, are copies of CSS's Amended Complaint. Case No. GJH-20-1804, ECF No. 8 & 10. ECF No. 8 did not include the redline version as required the Local Rules; consequently, CSS filed a corrected Amended Complaint, including the redline version, which is ECF No. 10. *See* Loc. R. 103.6(c).

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

onboard employees, such as the IRS Form W-4 and the USCIS Form I-9; (2) reporting the number of hours worked by each employee during each pay period as well as any changes, bonuses, or expenses; (3) paying advance retainers for the amount of payroll and associated payroll burden costs; and (4) paying all invoices in a timely manner. Case No. GJH-20-1804, ECF No. 10 ¶ 13; Case No. GJH-20-1804, ECF No. 8-1 at 3–4; ECF No. 26-1 at 18.

CSS alleges that CPDA represented to CSS, prior to entering the Contract, that CPDA Canvass would be able to provide the necessary information and funds in a timely manner so that CSS could in return timely perform its obligations under the Contract. Case No. GJH-20-1804, ECF No. 10 ¶¶ 14, 15. CSS also alleges that it relied on CPDA's representations and that CSS's ability to perform its obligations under the contract, as well as the welfare of CPDA Canvass' employees, depended on performance by CPDA Canvass and CPDA of the Contract obligations.[5] *Id.* ¶ 15. CSS asserts CPDA's representations were false, and Defendants knew or should have known that CPDA Canvass would be unable to provide the necessary information and funds, as required by the Contract, in a timely manner. *Id.* ¶¶ 41–43.

According to CSS, CPDA Canvass and CPDA failed to perform their obligations under the Contract. Specifically, Defendants, and various of their field managers, repeatedly failed or refused to provide, confirm, and/or approve the required Form W-4, Form I-9, and direct deposit authorizations when employees were hired as required under the Contract. *Id.* ¶ 18. Additionally, while CSS paid canvassers each Friday, never missing a payday, CPDA and CPDA Canvass's field managers and affiliates failed to report to CSS the hours worked by each canvasser in a timely manner as required by the Contract. *Id.* ¶¶ 19, 20. Finally, CPDA Canvass failed to timely

---

[5] Although the Contract was between CPDA Canvass and CSS, the individuals responsible for performing CPDA Canvass' obligations under the Contract were all officers and/or employees of CPDA and CPDA affiliates, acting in that capacity. Case No. GJH-10-1804, ECF No. 8 ¶¶ 16, 33–38. Moreover, the funds remitted to CSS under the Contract came from the accounts of CPDA. *Id.*

submit to CSS the first payment due under the Contract and then continually failed to make these payments in advance or to timely pay invoices as required under the Contract. *Id.* According to CSS, CSS was never repaid for approximately $300,000 of its own funds that it paid canvassers working on CPDA projects. *Id.* ¶ 21.

"Ultimately CPDA Canvass' breaches of the Contract created impossible operational and financial burdens for CSS and greatly burdened CSS's ability to service other clients." *Id.* ¶ 24. Accordingly, in October 2018, CSS terminated the Contract. *Id.* Nevertheless, even after the termination of the Contract, "CSS made every effort to see that no staffer was adversely affected or unpaid." *Id.* ¶ 25.[6] In fact, CSS offered to reinstate the Contract after its termination so that a worker seriously injured in Michigan could receive worker's compensation benefits, but CPDA refused to make the payments due so that reinstatement could be achieved. *Id.* ¶ 29.

### B. Procedural Background

CSS brought the original action, consolidated here, in Maryland state court against CPDA Canvass on March 11, 2019, seeking rescission of the Contract. ECF No. 1-2. CPDA Canvass removed the action to this Court on April 24, 2019, ECF No. 1, initiating Case No. GJH-19-1208, and then filed an answer with four counterclaims—breach of contract, unjust enrichment, defamation, and tortious interference—on May 1, 2019, ECF No. 5. CSS filed a Motion to Dismiss CPDA Canvass's counterclaims on May 22, 2019, ECF No. 8, and a Motion for Voluntary Dismissal of its rescission claim on November 1, 2019, ECF No. 14. On March 20, 2020, the Court granted CSS's request for voluntary dismissal of its rescission claim and granted, in part, and denied, in part, CSS's Motion to Dismiss CPDA Canvass's counterclaims,

---

[6] CSS also alleges that, after the termination of the Contract, Defendants collaborated with another CSS client to secretly put that client's workers on the list of CPDA Canvass workers that CSS was continuing to pay. Case No. GJH-20-1804, ECF No. 10 ¶ 26.

dismissing CPDA Canvass's unjust enrichment and tortious interference claims. ECF No. 18, 19.

CSS filed an answer to the remaining counterclaims on April 27, 2020. ECF No. 22.

On June 12, 2020, CSS filed a new Complaint in this Court, alleging breach of contract and constructive fraud against Defendants, initiating Case No. GJH-20-1804. Case No. GJH-20-1804, ECF No. 1. The parties filed a Joint Motion to Consolidate Cases on July 27, 2020. ECF No. 25; Case No. GJH-20-1804, ECF No. 7. While the Motion to Consolidate was pending, CSS filed an Amended Complaint in Case No. GJH-20-1804, adding an unjust enrichment claim. Case No. GJH-20-1804, ECF Nos. 8, 10. CPDA Canvass and CPDA then, on September 1, 2020, filed the same Motion to Dismiss CSS's Amended Complaint in both cases, anticipating that the cases would be consolidated. ECF No. 26; Case No. GJH-20-1804, ECF No. 11. CSS responded in opposition on September 22, 2020, ECF No. 29; Case No. GJH-20-1804, ECF No. 13, and CPDA Canvass and CPDA replied on October 12, 2020, ECF No. 32; Case No. GJH-20-1804, ECF No. 15. The Court granted the parties' Joint Motion to Consolidate on March 23, 2021, consolidating Case No. GJH-19-1208 and Case No. GJH-20-1804. ECF No. 33; Case No. GJH-20-1804, ECF No. 16.

## II.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve

contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v.*

*City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks

omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true

all of the factual allegations contained in the complaint[,]" and must "draw all reasonable

inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon*

*Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted).

The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cnty.*

*Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations,

*see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any

reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847

(4th Cir. 1979).

## III.    DISCUSSION

### A.    Breach of Contract (Count I)

To survive a motion to dismiss a breach of contract claim under Maryland law, a plaintiff

must allege facts showing that (1) the defendant owed plaintiff a contractual obligation and (2)

the defendant breached that obligation. *See Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md.

2001). Here, CSS attaches the original version of the Contract it signed with CPDA Canvass,[7]

---

[7] As indicated above, Plaintiff also asserts contract claims against CPDA. "The general rule in Maryland is that a person cannot be held liable under a contract to which he was not a party." *Mowbray v. Zumot*, 533 F. Supp. 2d 554, 564 (D. Md. 2008) (internal quotation marks and citations omitted). However, "under the alter ego doctrine, parties in control of a corporation may be held liable under a contract with the corporation even if they are not a party to the contract." *Cong. Bank v. Potomac Educ. Found., Inc.*, No. PWG-13-889, 2014 WL 347632, at *12 (D. Md. Jan. 20, 2014) (internal quotation marks omitted) (citing *Hildreth v. Tidewater Equip. Co.*, 838 A.2d 1204, 1210 (Md. 2003)). "[T]he alter ego doctrine has been applied where the corporate entity has been used as a subterfuge and to

effective March 2018, to the Amended Complaint, Case No. GJH-20-1804, ECF No. 8-1, and

Defendants attach to their Motion to Dismiss a rider the parties added to the Contract in August

2018, ECF No. 26-1 at 18.[8]

CSS alleges two ways in which Defendants, materially breached obligations owed to CSS

under the Contract: (1) "failing to provide necessary information when needed" and (2) "failing

to make payments to CSS when due under the Contract." Case No. GJH-20-1804, ECF No. 10

¶ 31; *see also id.* ¶ 28 (describing the breach of the Contract as "the failure and refusal to provide

timely payroll funding and employment information"). The Court will discuss each alleged

breach separately below.

### 1.      Failure to Timely Provide Necessary Information

CSS alleges, and the Contract supports, that CPDA Canvass was required under the

---

observe it would work an injustice, the rationale being that if the shareholders or the corporations themselves disregard the proper formalities of a corporation, then the law will do likewise as necessary[.]" *Hildreth*, 838 A.2d at 1210 (internal quotation marks and citations omitted).

CSS alleges that applying the alter ego doctrine to CPDA is appropriate in this case because: (1) CPDA officers, acting in that capacity, were the ones to misrepresent CPDA Canvass's ability to provide the required information and documents in a timely way, Case No. GJH-20-1804, ECF No. 10 ¶ 33; (2) CPDA officers, acting in that capacity, made the aforementioned misrepresentations in order to induce CSS to enter a contract with CPDA Canvass rather than CPDA directly, *id.*; (3) CPDA officers and employees, acting in that capacity, were the individuals that caused CPDA Canvass to breach the Contract and interfered with CSS's ability to calculate payroll, *id.* ¶ 34; (4) CPDA Canvass had no management staff of its own, but instead relied entirely on the staff of CPDA with respect to oversight and management of the canvassing operations, *id.* ¶ 35; (5) CPDA, not CPDA Canvass, made the payments to CSS under the Contract and the money came from CPDA bank accounts, *id.* ¶ 36; (6) CPDA staff, acting in that capacity, made all the decisions and communications relating to the performance of the Contract and the operations on which the employees worked, *id.* ¶ 37; and (7) CPDA Canvass has no assets, funds, or properties of its own, *id. Id.* ¶ 38. In the instant Motion to Dismiss, Defendants fail to argue that CSS's allegations do not support the application of the alter ego doctrine. Thus, for purposes of this Motion, the Court finds CSS adequately alleges a breach of contract claim against CPDA based on the Contract between CSS and CPDA Canvass.

[8] The Court, in considering a motion to dismiss, may take judicial notice of a document "attached or incorporated into the complaint[,]" *E.I. du Pont de Nemours & Co. v. Kolon Indus. Inc.*, 637 F.3d 435, 448 (4th Cir. 2011), and may also consider documents attached to a motion to dismiss, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). CSS attached a copy of the Contract as originally drafted and signed to the Amended Complaint, Case No. GJH-20-1804, ECF No. 8-1, and a rider to the Contract—the authenticity of which has not been disputed—is unquestionably integral to the Amended Complaint, especially to CSS's breach of contract claim, ECF No. 26-1 at 18.

Contract to "timely transmit to [CSS] information on Wages to be paid to each Covered

Employee" as well as to "[t]imely notify [CSS] of any changes in Covered Employees, including

new employees hired, employees terminated and any changes in wages, hours or other terms of

employment of Covered Employees[.]" No. 8-1 at 3; *see also* Case No. GJH-20-1804, ECF No.

10 ¶ 13 ("Performance of the Contract required that CPDA Canvass provide timely and accurate

information to CSS about CPDA Canvass' workers working on each project, including

documents required to onboard employees such as the IRS Form W-4 and the USCIS Form I-9

and, during each pay period, reporting the number of hours worked by each employee and any

changes, bonuses or expenses."). CSS claims that, in breach of their obligations, "CPDA

Canvass, CPDA and various of their field managers repeatedly failed or refused to provide,

confirm and/or approve the required forms[, such as the Form W-4, I-9, and direct deposit

authorizations.]" Case No. GJH-20-1804, ECF No. 10 ¶ 18; *see also id.* ¶ 23 ("[F]ailing and

refusing to provide timely and accurate initial documentation needed to hire canvassers[.]").

Additionally, CSS claims that "CPDA/CPDA Canvass field managers and affiliates were

obligated to, but often failed, to report to CSS the hours worked by each canvasser the Monday

preceding the Friday on which wages and salaries were to be paid." *Id.* ¶ 19; *see also id.* ¶ 23

("[F]ailing and refusing to provide, in a timely way, accurate information about hours worked for

each worker[.]"). These allegations, "accept[ed] as true" and "draw[ing] all reasonable inferences

in favor of the plaintiff[,]" *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440, support a breach of

contract claim.

Nevertheless, Defendants assert that "CSS's claims regarding insufficient documentation

are without basis in (or citation to) any contractual obligation on the part of CPDA to actually

provide those things." ECF No. 26-1 at 9. The Court disagrees. Under the Contract, CSS was

responsible for "maintain[ing] all employee related records, as may be required by federal and state laws and Client policies[,]" and "mak[ing] all required deductions and withholdings under applicable federal, state and local laws," while CPDA Canvass had the "sole responsibility for the day to day control and supervision of the Covered Employees, including hiring" and was required to "timely notify [CSS] of any changes in Covered Employees, including new employees hired[.]" Case No. GJH-20-1804, ECF No. 8-1 at 2–3. Thus, while the Contract does not explicitly require CPDA Canvass to provide the required forms—W-4, I-9, etc.—such a requirement is, at the least, a reasonable interpretation of an ambiguity in the Contract, especially since it seems likely that, under the terms of the Contract, the forms would be provided to CPDA Canvass in the first instance, but CSS was responsible for maintaining those records and using the information in those records to make the appropriate deductions and withholdings. *See Logic Growth, LLC v. Day*, No. SAG-20-2889, 2021 WL 533732, at \*3 (D. Md. Feb. 12, 2021) (slip copy) ("A 'contract is ambiguous if it is subject to more than one interpretation when read by a reasonably prudent person.'" (quoting *Sy-Lene of Wash. V. Starwood Urban Retail II, LLC*, 829 A.2d 540, 547 (Md. 2003)). "[G]enerally 'the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim.'" *Butz v. Pulte Home Corp.*, No. PX-16-1508, 2017 WL 679226, at \*4 (D. Md. Feb. 21, 2017) (quoting *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 978 F.2d 140, 143 (4th Cir. 1992)); *see also Key Tidewater Ventures LLC v. PNC Bank, N.A.*, No. JKB-14-2170, 2014 WL 5306716, at \*5 (D. Md. Oct. 15, 2014) ("[T]he contract is not so clear and unambiguous such that the Court can dismiss Plaintiff's claims as a matter of law at this early stage of litigation.").

Defendants also claim that CSS's allegation that CPDA Canvass "often failed" to report the number of hours worked by each employee and any changes, bonuses, or expenses is

insufficiently specific to support a breach of contract claim. ECF No. 26-1 at 10–11. The Court

again disagrees. Under the pleading standards laid out in *Twombly*, "a complaint attacked by a

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," rather the factual

allegation just need "to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at

555. The Court finds CSS has met that standard here. *See MAO-MSO Recovery II, LLC v. Gov't

Emps. Ins. Co.*, Nos. PWG-17-711, PWG-17-964, 2018 WL 999920, at \*8–12 (D. Md. Feb. 21,

2018) (holding that the plaintiff, at the motion to dismiss stage, did not need to allege "specific

instance[s]" of the defendant-insurer failing to pay medical charges).

Finally, Defendants argue that CSS has not sufficiently alleged that CPDA Canvass's

failure to provide accurate information regarding the hours worked by each employee/canvasser

was a *material* breach of the Contract. ECF No. 26-1 at 11. This argument fails as well. "A

breach is material when it is such that further performance of the contract would be different in

substance from that which was contracted for." *Brufaldi v. Ocean City, Chamber of Com., Inc.*, 7

A.3d 643, 656 (Md. Ct. Spec. App. 2010) (internal quotation marks and citation omitted). The

Contract required CSS to "[a]ssume full responsibility . . . for payment of Wages of the Covered

Employees, *as reported by Client*, through [CSS's] payroll[.]" Case No. GJH-20-1804, ECF No.

8-1 at 2 (emphasis added). CSS alleges that Defendants disrupted CSS's "ability to calculate

payroll by failing and refusing to provide timely and accurate initial documentation needed to

hire canvassers and then failing and refusing to provide, in a timely way, accurate information

about hours worked for each worker." Case No. GJH-20-1804, ECF No. 10 ¶ 23. CSS also states

that, although it never missed a payday, Defendants' breaches complicated their ability to make

payment, required them to use methods other than their payroll system, and required them to

make payments based on estimated amounts—payments that later had to be reconciled for tax

purposes. *See id.* ¶ 20. CSS also alleges that Defendants' breach interfered with its ability to make payroll withholdings. *See id.* ¶ 28; *see also* Case No. GJH-20-1804, ECF No. 8-1 at 2. CSS's factual allegations are sufficient to support a claim that Defendants' failure to timely provide accurate information regarding their employees was a material breach.

CSS has sufficiently alleged a breach of contract claim based on CPDA Canvass's alleged failure to provide necessary employee information in a timely manner and thus the instant Motion to Dismiss is denied as to this claim.

**2.      Failure to Make Payments When Due Under the Contract**

As to the second alleged breach, CSS alleges that "[t]he Contract by its terms required that CPDA Canvass pay advance retainers for the amount of payroll and associated payroll burden costs[,]" that CPDA Canvass pay such retainer "prior to the date on which CSS was to make disbursements on behalf of CPDA Canvass[,]" and that CPDA Canvass pay invoices in a timely manner. Case No. GJH-20-1804, ECF No. 10 ¶ 13. The Court will first discuss the viability of CSS's claim that Defendants were obligated to pay advance retainers and breached that obligation, before discussing the sufficiency of CSS's claim that CPDA Canvass was required to pay invoices in a timely manner and breached that obligation as well.

**a.      The Payment of Advance Retainers**

The Contract as initially drafted supports CSS's claims that CPDA Canvass was required to pay advance retainers. The original Contract states that CPDA Canvass:

> shall make available in a designated [CPDA Canvass] account, at least four (4) business days *prior to the date* on which such disbursement by [CSS] will be required, (the "Due Date") sufficient funds to cover that disbursement and will authorize [CSS] electronically to withdraw and transfer to CSS the amount of such disbursement on the Due Date for that disbursement.

Case No. GJH-20-1804, ECF No. 8-1 at 4 (emphasis added). CPDA Canvass's obligation to pay these advances is not conditioned on CSS providing CPDA Canvass with an invoice—or at least

such a condition is ambiguous at best. *See id.* at 3–4; ECF No. 26-1 at 3, 18 (stating that the

purpose of the rider, which explicitly conditions CPDA Canvass's payment on the receipt of a

correct invoice, was "to correct ambiguities in the contract"). Thus, the Court can make the

reasonable inference that, under the terms of the original Contract—applicable from March 5,

2018, Case No. GJH-20-1804, ECF No. 8-1 at 2 (providing the effective date of the original

Contract), until August 21, 2018, ECF No. 26-1 at 18 (providing the date of the rider)—CPDA

Canvass was obligated to pay CSS in advance of disbursement regardless of whether CSS had

provided an invoice.[9] Consequently, assuming CSS's factual allegations are true, when

Defendants "failed to timely submit to CSS the first payment due under the Contract—covering

payroll, employers' share of withholdings and payroll taxes and fees[,]" Defendants breached the

Contract. ECF No. 10 ¶ 19. Additionally, to the extent that, before August 21, 2018, Defendants

"repeatedly failed to make these payments in advance[,]" those failures were breaches as well.

*Id.* CSS has adequately pleaded a breach of contract claim based on Defendants' alleged failure

to make advance payments, and the Court denies Defendants' Motion as to this claim.[10]

### b.      The Payment of Invoices

---

[9] Defendants imply in their Motion to Dismiss that the rider's terms were retroactively applicable to the parties' obligations before the rider was executed. *See* ECF No. 26-1 at 8 n.5 (arguing that CSS's claim that Defendants failed to timely submit the *first* payment due under the contract—which the Court reasonably infers was due before the existence of the rider—cannot survive because CSS "never alleges that its invoices were 'correct' as required by the Rider"). However, it is unclear from the face of the rider whether such a conclusion is appropriate, *see* ECF No. 26-1 at 18. In fact, it is equally plausible that the rider only changed the parties' obligation going forward, and the Court is required under the motion to dismiss standard to make all reasonable inferences in CSS's favor.

[10] CSS alleges in the Complaint that "[t]he parties modified certain of the terms of the Contract through practice" and implied one of those modifications was that "CPDA Canvass was obligated to advance the necessary funds to CSS." Case No. GJH-20-1804, ECF No. 10 ¶ 17. Defendants responded in their Motion to Dismiss that, under the terms of the Contract, the Contract could not be modified through practice. ECF No. 26-1 at 7; Case No. GJH-20-1804, ECF No. 8-1 at 7. Consequently, CSS, in its opposition to Defendants' Motion to Dismiss, appears to abandon this claim. *See* ECF No. 29. One possible view of CSS's modification-by-practice allegation is that it is inconsistent with CSS's claim that CPDA Canvass was obligated under the terms of the original Contract to pay CSS in advance of disbursement. However, the inconsistency in CSS's pleadings is not fatal to its breach of contract claim. Making reasonable inferences in CSS's favor, CSS's claim that certain terms of the Contract were modified through practice could reasonably refer to terms found in the rider, which explicitly require an invoice to be issued before CPDA Canvass is obligated to make a payment.

12

The August 2018 rider to the Contract supports CSS's claim that CPDA Canvass also breached a contractual obligation to CSS by failing to pay invoices in a timely manner. The rider states that "CPDA Canvass Network will pay [CSS] within two weeks of receiving correct invoices, and only after receiving correct invoices[,]" ECF No. 26-1 at 18, which confirms CSS's allegation that CPDA Canvass was obligated under the terms of the Contract to pay invoices in a timely manner, *see* Case No. GJH-20-1804, ECF No. 10 ¶ 13. CSS then plausibly alleges that this contractual obligation was breached when CPDA Canvass repeatedly failed to "timely pay invoices as required under the Contract[.]" *Id.* ¶ 19; *see also id.* ¶ 21 (stating CSS spent $300,000 of its own funds to pay canvassers but was never reimbursed by CPDA Canvass or CPDA); *id.* ¶ 27 ("CPDA Canvass ha[s] not only been repeatedly late in paying CSS but ha[s] failed entirely to pay approximately $300,000 that it owed to CSS under and pursuant to the Contract.").

Defendants, however, argue that the rider conditioned "CPDA's obligations to pay CSS's invoices . . . []on such invoices being 'correct[,]'" and CSS does not allege that any of its invoices were correct. ECF No. 26-1 at 8. This argument is unpersuasive. CSS claims in its Amended Complaint that Defendants failed to pay invoices "as required under the Contract[,]" which supports the reasonable inference that CSS's invoices were correct, since otherwise payment would not have been required under the terms of the Contract. *See* Case No. GJH-20-1804, ECF No. 10 ¶ 19; ECF No. 26-1 at 18.

Defendants' alternative argument that CSS could not have provided correct invoices because, by CSS's own allegations, CPDA did not provide accurate information about the hours worked by canvassers, is equally unconvincing. ECF No. 26-1 at 8. The Amended Complaint appears to allege that Defendants failed to timely provide the necessary employee information as required by the Contract, not that Defendants never provided the information. *See* Case No.

GJH-20-1804, ECF No. 10 ¶ 19 ("CPDA/CPDA Canvass field managers and affiliates were

obligated to, but often failed, to report to CSS the hours worked by each canvasser the Monday

preceding the Friday on which wages and salaries were to be paid."); *id.* ¶ 23 ("[F]ailing and

refusing to provide, in a timely way, accurate information about hours worked for each

worker.").

CSS has adequately pleaded a breach of contract claim based on Defendants' alleged

failure to pay invoices in a timely manner, and the Court denies Defendants' Motion to Dismiss

as to this claim.

### B. Unjust Enrichment (Count II)

Under Maryland law, "a claim for unjust enrichment may not be brought where the

subject matter of the claim is covered by an express contract[.]" *Robinson v. Fountainhead Title

Grp. Corp.*, 447 F. Supp. 2d 478, 493 (quoting *FLF, Inc. v. World Publ'ns, Inc.*, 999 F. Supp.

640, 642 (D. Md. 1998)); *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*,

747 A.2d 600, 607 (Md. 2000). Parties entering a valid contract "assume[] certain risks with an

expectation of a return." *Cnty Comm'rs*, 747 A.2d at 607 (quoting *Mass Transit Admin. v.

Granite Constr. Co.*, 471 A.2d 1121, 1126 (Md. Ct. Spec. App. 1984)). When a party's

expectations under a contract are not realized, they may not "[i]n desperation . . . turn to quasi-

contract for recovery." *Id.* (quoting *Mass Transit Admin. v. Granite Constr. Co.*, 471 A.2d 1121,

1126 (Md. Ct. Spec. App. 1984)). A party states a claim for the equitable remedy of unjust

enrichment only when "an enforceable contract does not exist but fairness dictates that the

Plaintiff receive compensation for services provided." *Id.* (quoting *Dunnaville v. McCormick &

Co.*, 21 F. Supp. 2d 527, 535 (D. Md. 1998)).

CSS may therefore only state an unjust enrichment claim if, as alleged, they are "entitled

to rescission of the Contract" due to Defendants' misrepresentations. Case No. GJH-20-1804, ECF No. 10 ¶¶ 46, 47. Under Maryland law, "the party seeking rescission must indicate to the other party . . . the intent to restore the parties to the relative positions . . . they would have occupied if no such contract had ever been made . . . as soon as the disenchanted party learns of the facts." *Lazorcak v. Feuerstein*, 327 A.2d 477, 481 (Md. 1974); *see also Ellerin v. Fairfax Sav. Ass'n*, 552 A.2d 918, 927 (Md. Ct. Spec. App. 1989) ("Rescission is considered to be a radical remedy; it therefore must be promptly asserted once a party discovers facts which justify it."). In the instant case, CSS did not seek immediate restoration once it learned of Defendants' inability to perform their contractual obligations, which presumably was, at the latest, October 2018, when CSS terminated the Contract. *See* Case No. GJH-20-1804, ECF No. 10 ¶ 24. Instead, CSS continued to attempt to collect past due payments under the Contract from Defendants. *Id.* ¶ 27. Collection of past due payments is an "act which recognizes the continued validity of the contract[,]" which "waive[s] [the disenchanted party's] right to rescind." *Lazorcak*, 327 A.2d at 481; *see also Kemp. v. Weber*, 24 A.2d 779, 780 (Md. 1942) ("When a party to a contract is faced by some failure in carrying out its terms on the part of the other party, he has, in general, either a right to retain the contract, and collect damages for its breach, or a right to rescind the contract and recover his own expenditures. Obviously he cannot do both. . . . All the authorities hold that such choice must be exercised as soon as the party ascertains the facts, and is informed of the failure on the part of the other party."); *Ellerin*, 552 A.2d at 927 ("The right to rescind . . . may be waived by treating the contract as a continuing obligation. If a party acts in a way which recognizes the subsisting validity of the contract or indicates that he or she still feels bound under it, he or she will be held to have waived the right to rescind."). Thus, the Court finds CSS has

waived its right to rescind the Contract.[11]

Because rescission of the Contract is inappropriate, a valid contract exists in the instant

case and, consequently, CSS's unjust enrichment claim is barred. *See Robinson*, 447 F. Supp. 2d

at 493. The Court grants Defendants' Motion to Dismiss with respect to Count II, CSS's unjust

enrichment claim.[12]

### C.    Constructive Fraud (Count III)

In Maryland, constructive fraud is a breach of "a legal or equitable duty which,

irrespective of moral guilt of the fraud feasor, the law declares fraudulent because of its tendency

---

[11] This conclusion is reinforced by the fact that CSS originally brought this rescission claim in April 2019, ECF No. 1, six months after CSS's alleged termination of the Contract, Case No. GJH-20-1804, ECF No. 10 ¶ 24, voluntarily dismissed the rescission claim in November 2019, ECF No. 14, and then requested rescission again in August 2020—this time as part of an unjust enrichment claim rather than as a separate claim for rescission. Case No. GJH-20-1804, ECF No. 10. CSS makes no attempt to explain the almost two-year delay between CSS's termination of the Contract due to Defendants' alleged breach and CSS's latest request for rescission. Nor does CSS address Defendants' untimeliness argument at all. *See* ECF No. 29. Moreover, CSS's previous voluntary dismissal of its rescission claim resulted in the dismissal of CPDA Canvass's unjust enrichment claim, ECF No. 18, thus CSS took advantage of the existence of the Contract before again asserting that rescission is appropriate. *See Kemp*, 24 A.2d at 780 ("[A party] cannot, of course, retain the benefits [of the Contract] and get back [its] expenditures."); *Ellerin*, 552 A.2d at 927 ("If a party acts in a way which recognizes the subsisting validity of the contract or indicates that he or she still feels bound under it, he or she will be held to have waived the right to rescind.").

[12] Although not explicitly argued by the parties, the Court notes that rescission would be inappropriate in the instant case, even if CSS had not waived its rights to rescind, because CSS does not sufficiently allege that Defendants made a misrepresentation of past or present fact. CSS claims that it is entitled to rescission due to Defendants' misrepresentations, which induced CSS to enter the Contract. Case No. GJH-20-1804, ECF No. 10 ¶¶ 39–47. A party makes a representation when they provide a statement communicating "past or existing fact[s]," but not when they merely communicate "expressions of opinion as to what will happen in the future" or when they make a promise. *Appel v. Hupfield*, 84 A.2d 94, 96 (Md. 1951). However, "the existing intention of a party at the time of contracting is a matter of fact." *Levin v. Singer*, 175 A.2d 423, 432 (Md. 1961). Therefore a "misrepresentation claim based on statements promissory or predictive in nature is not viable [u]nless the plaintiff puts forward evidence . . . that the promisor or predictor made the statements with the present intention not to perform[.]" *200 North Gilmor, LLC v. Capital One, Nat'l Ass'n*, 863 F. Supp. 2d 480, 493 (D. Md. 2012) (internal quotations and citation omitted).

In the instant case, CSS claims that "[Defendants] represented . . . [they] would be able to provide the necessary information . . . for CSS to perform its obligations . . . and that [Defendants] would be able to make the necessary advances or reimbursements." Case No. GJH-20-1804, ECF No. 10 ¶ 39. Whether Defendants would be able to provide necessary information or advances is "promissory or predictive in nature," *200 North Gilmor*, LLC, 863 F. Supp. 2d at 493, it does not represent past or present fact, *Appel*, 84 A.2d at 96. Because the Amended Complaint does not allege Defendants made these promises with the present intent not to perform, CSS has not properly alleged a misrepresentation of past or present fact, and thus rescission is inappropriate on this ground as well. *200 North Gilmor, LLC*, 863 F. Supp. 2d at 493.

to deceive others, to violate public or private confidence, or to injure public interests." *Dowling v. A.R.T. Inst. of Wash., Inc.*, 372 F. Supp. 3d 274, 295 (D. Md. 2019) (quoting *Canaj, Inc. v. Baker & Div. Phase III, LLC*, 893 A.2d 1067, 1095 (Md. 2006)). Here, CSS alleges that Defendants "owed an equitable duty to CSS []to protect the employees in the interest of all parties and the employees themselves by providing necessary information in a timely way[,]" Case No. GJH-20-1804, ECF No. 10 ¶ 55, and that Defendants "breached that equitable duty to CSS . . . by deceiving CSS []about CPDA Canvass' ability to perform its obligation under the Contract and about the facts relating to the hours worked by the employees[,]" *id.* ¶ 56. However, CSS has failed to plead its constructive fraud claim with the requisite specificity required by Fed. R. Civ. P. 9(b). *See Fotopoulos v. Bank of Am. N.A.*, No. JMC-19-2178, 2020 WL 607008, at *5–*6 (D. Md. Feb. 7, 2020) (slip copy) (applying the heightened pleading requirements of Fed. R. Civ. P. 9(b) to the plaintiff's constructive fraud claim).

"In accordance with Federal Rule of Civil Procedure 9(b), when alleging fraud or mistake, 'a party must state with particularity the circumstances constituting fraud or mistake.'" *Id.* at *5 (quoting *Willis v. Bank of Am., N.A.*, No. ELH-13-2615, 2015 WL 5157501, at *9 (D. Md. Sept. 2, 2015). Specifically, in order to comply with Fed. R. Civ. P. 9(b), CSS must describe, at a minimum, the "time, place, and contents of the false representations, as well as the identity of the persons making the misrepresentation and what he obtained thereby." *Id.* (citation omitted).

CSS sufficiently alleges the contents of the false representation: Defendants represented that they were able to perform their obligations to provide CSS with timely employee information and to make available to CSS the funds necessary to pay the workers and make the necessary tax deposits and withholdings. *See* ECF No. 29 at 13 (citing Case No. GJH-20-1804,

ECF No. 10 ¶¶ 53, 54). However, CSS concedes that the Amended Complaint "does not specify a place or the names of the persons making the representations" as required by the Fed. R. Civ. P. 9(b). *Id.* at 14. Rather, CSS argues that it is alleging an ongoing scheme of deception and violation of confidence and thus its allegations are sufficiently specific under *Shamis v. Ambassador Factors Corporation. Id.* (citing *Shamis v. Ambassador Factors Corp.*, No. 95-civ-9818 (RWS), 1996 WL 457320, at *3 (S.D.N.Y. Aug. 14, 1996) ("Since Plaintiff is not alleging specific acts of fraud but rather a pervasive scheme to defraud via concealment, pleading with the degree of particularity typically mandated by Rule 9(b) may not be necessary or even feasible")).

First, as Defendants note, CSS's citation to *Shamis* is inapposite because CSS is not alleging fraud by concealment—when a plaintiff alleges fraud by concealment, Rule 9(b) may be relaxed. *See Fotopoulos*, 2020 WL 607008, at *6 ("The relaxed Rule 9(b) analysis applies only to claims of omission, and as Plaintiff makes no claim that Defendant omitted material facts this is inapplicable." (internal quotation marks and citations omitted)). Second, it is unclear how the alleged scheme is ongoing considering the contract was terminated over two years ago. *See* Case No. GJH-20-1804, ECF No. 10 ¶ 24. Finally, although the Court notes that the Fourth Circuit's decision in *Fessler v. International Business Machines Corporation*, cited by CSS in its Opposition, supports the contention that a plaintiff need not allege the actual name of the person or persons making the misrepresentations, but may instead narrow it down to a class of persons, 959 F.3d 146, 155 (4th Cir. 2020), CSS has not even reached that level of specificity. Rather, CSS alleges that "CPDA represented to CSS that CPDA Canvass would be able to" perform under the Contract. Case No. GJH-20-1804, ECF No. 10 ¶ 14. This is insufficiently specific. *Fotopoulos*, 2020 WL 607008, at *6.

Because CSS fails to plead its constructive fraud claim with the level of specificity required by Fed. R. Civ. P. 9(b), the Court grants Defendants' Motion to Dismiss as to that claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted, in part, and denied, in part. A separate Order shall issue.


Date: July    7, 2021                                   /s/_____

                                                       GEORGE J. HAZEL
                                                       United States District Judge