# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | |
|---|---|
| COLLECTIVE SHARED SERVICES, LLC, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 8:19-cv-01208-CBD |
| | * |
| CPDA CANVASS NETWORK, LLC, *et al.*, | * (consolidated with |
| | *Case No. 8:20-cv-01804) |
| Defendants | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S ANSWER TO COUNTERCLAIMS

Plaintiff/Counterclaim Defendant Collective Shared Services, LLC ("CSS"), by and through undersigned counsel, for its Answer to the Counterclaims set forth in the Amended Answer and Counterclaims filed by Defendants CPDA Canvass Network, LLC ("CPDA Canvass") and Center for Popular Democracy Action Fund, Inc. ("CPDA") (ECF No. 41), states as follows.  CSS is filing this Answer to the Factual Allegations of the Counterclaims and to the two Counterclaims that survived CSS' Motion to Dismiss, Counts I (Breach of Contract) and III (Defamation).  Paragraph references are to Defendants' Answer and Counterclaims filed in response to the original Complaint (ECF No. 5):

**PARTIES, JURISDICTION AND VENUE**

1.      CSS lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 1.

2.      CSS admits that on or about March 5, 2018, CPDA entered into a multi-state contract with CSS in the form attached to the Complaint as Exhibit A, but does not admit that

the contract was valid.CSS lacks knowledge or information to sufficient to form a belief as to the truth of the other allegations contained in Paragraph 2.

3.  CSS admits that CSS is a limited liability company of which Melvin Duane Stillwell is a member. The other allegations set forth in Paragraph 3 are legal conclusions to which no response is required.

4.  CSS admits the allegations of Paragraph 4.

**FACTUAL ALLEGATIONS**

5.  CSS avers that the contents of the Contract speak for themselves, and otherwise CSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5.

6.  CSS denies the allegations of Paragraph 6. CSS fully performed its obligations under the Contract. It was CPDA that failed to perform its obligations under the Contract, in particular, by repeatedly failing to provide necessary information in a timely way and failing to provide CSS with the funds necessary to disburse payroll and make the necessary withholdings.

7.  CSS denies the allegations of Paragraph 7. The parties modified certain of the terms of the Contract through practice. CPDA field managers were obligated to confirm and approve required employment forms as employees were hired, including the Form W-4, I-9 and direct deposit authorizations. CPDA and various of its field managers repeatedly failed to confirm and approve the required forms. CSS paid canvassers every pay day (Friday). CPDA field managers were obligated to report to CSS the hour worked by each canvasser, and to submit that report by the Monday preceding the Friday on which salaries were to be paid. This deadline was necessitated by the specific requirements of timely submission of payroll

specifics to the payroll bureau for processing of ACH transfers and direct deposits.  CPDA also failed to make to CSS the first payment due under the Contract—payroll, employers' share of withholdings and payroll taxes and fees—and then repeatedly failed to make these payments in advance as required under the Contract. CSS then used its own funds to pay canvassers and  when possible make the necessary withholdings and tax deposits. If CSS did not have enough of its own funds to pay the salary and make the payroll tax deposits, it prioritized paying canvassers.  CSS was never repaid for tens of thousands of dollars of its own funds spent in this way under this Contract (and for well in excess of half a million dollars under all of its contracts with CPDA).  CSS never missed a payday, while the Contract was in effect.

8. CSS denies the allegations of Paragraph 8.

9. CSS denies the allegations of Paragraph 9. CSS told CPDA on several occasions when CPDA had failed to perform its obligation to advance the necessary funds to CSS that CSS might not be able to make payroll.  But in fact, CSS always paid the canvassers their salaries on payday, using its own funds to do so when necessary. The advances did not depend on the issuance of invoices, which were only sent <u>after</u> the payroll was expended.

10. CSS avers that the contents of the Rider speak for themselves; and otherwise denies the allegations  of Paragraph 10.

11. CSS denies the allegations of Paragraph 11. CSS provided accurate invoices.

12. CSS denies the allegations of Paragraph 12.  CSS never failed to pay canvassers during the term of the Contract, even when CPDA failed to meet its obligations to provide accurate and timely information and to advance the necessary funds.

13. CSS denies the allegations of Paragraph 13.

3

14. CSS denies the allegations of Paragraph 14. Again, CSS never failed to pay canvassers during the term of the Contract, even when CPDA failed to meet its obligations to provide accurate and timely information and to advance the necessary funds.

15. CSS denies the allegations of Paragraph 15. Make the Road Pennsylvania ("MRPA") was not covered by the Contract that is the subject of this case. The One Pennsylvania ("One PA") project was covered by the Contract, but to the best of CSS's knowledge and according to payroll reports, there were never 50 canvassers employed in total or at one time on the One PA project. CSS has no specific knowledge as to activities or assignments in a Philadelphia office. No canvasser went unpaid.

16. CSS denies the allegations of Paragraph 16.

17. CSS denies the allegations of Paragraph 17. CSS always paid canvassers even when CPDA's actions made that extremely difficult. When information was not timely submitted, CSS paid canvassers using pay cards, wire transfers and Western Union, based on gross pay amounts, later reconciled for tax purposes where possible. CSS introduced a new online system in an effort to address the repeated failure of CPDA and its affiliates to provide the information needed to onboard employees and calculate payroll. CSS' onboarding system had operated flawlessly and effectively for more than five years prior to CPDA's contracting with CSS. CPDA refused to properly use the proven system and encouraged its affiliates to disrupt CSS's ability to calculate payroll by failing and refusing to provide initial documentation needed to hire canvassers and then failing and refusing to provide accurate information about hours worked in a timely way.

18. CSS admits that it terminated the Contract based on CPDA's material breach of the Contract, and so notified CPDA. CSS admits that CPDA requested documentation in

various forms and at various times but avers that CSS complied with each such request and no complaint was ever made to CSS by CPDA, nor funds refused, by reason of a failure of documentation. CSS denies the remaining allegations of Paragraph 18.

19. CSS denies the allegations of Paragraph 19.

20. CSS denies the allegations of Paragraph 20. CSS properly provided and administered health insurance and welfare benefits for canvassers hired pursuant to the Contract who were entitled to such insurance and benefits. CSS has never been made aware of any such entitled staffer being denied coverage under any relevant insurance policy and CPDA, to date, has never funded the provided coverage: all coverage was at CSS' expense.

21. CSS admits that it was unable to make certain deposits of federal and state payroll taxes only because CPDA failed to meet its obligation to advance the necessary funds. CSS used its own funds and prioritized paying the canvassers their salaries. Separately, CPDA remains a responsible party for payment of such taxes to relevant federal and state tax agencies. CSS denies the remaining allegations of Paragraph 21.

22. CSS avers that the contents of the February 11 Letter speak for themselves and otherwise denies the allegations of Paragraph 22.

23. CSS admits that TruCorps sent truthful emails and other communications to former CSS employees who worked under the Contract for CPDA and/or its affiliates and certain senior CPDA officials; and denies the remaining allegations of Paragraph 23.

24. CSS admits that it used the email addresses of its own former employees (co-employed by CSS under the Contract to perform services for CPDA and/or is affiliates) to send truthful communications to those former employees; and denies the remaining allegations of Paragraph 24.

25. CSS denies the allegations of Paragraph 25.

26. CSS avers that the contents of the March 15 Letter speak for themselves and otherwise denies the allegations of Paragraph 26.

27. CSS admits that it used the email addresses of former employees (co-employed by CSS under the Contract to perform services for CPDA and/or is affiliates) to send truthful communications to those former employees with information they needed to know; and denies the remaining allegations of Paragraph 27.

## FIRST COUNTERCLAIM
## BREACH OF CONTRACT

28. CSS repeats and realleges each of the responses set forth in Paragraphs 1 through 27 of this Answer

29. CSS denies the allegations of Paragraph 29. CPDA did not fulfill its own obligations under the Contract.

30. CSS admits that it used the email addresses of former employees (co-employed by CSS under the Contract to perform services for CPDA and/or is affiliates) to send truthful communications to those former employees with information they needed to know; and denies the remaining allegations of Paragraph 30.

31. CSS avers that the terms of the Contract speak for themselves; that the remaining allegations of Paragraph 31 set forth a legal conclusion to which no response is required.

32. CSS denies the allegations of Paragraph 32.

33. CSS denies the allegations of Paragraph 33.

## THIRD COUNTERCLAIM

## DEFAMATION

41. CSS repeats and realleges each of the responses contained in Paragraphs 1 through 33 of this Answer.

42. CSS denies the allegations of Paragraph 42.

43. CSS admits that it used the email addresses of former employees (co-employed by CSS under the Contract to perform services for CPDA and/or is affiliates) to send truthful communications to those former employees with information they needed to know; and denies the remaining allegations of Paragraph 43.

44. CSS admits that it stated that, with respect to the disputed amounts, it truthfully told former employees that CPDA "paid no one but themselves;" and denies the remaining allegations of Paragraph 44.

45. CSS denies the allegations of paragraph 45.

46. CSS admits that it sent messages to former employees and others via direct email and publication on social media; and denies the remaining allegations of Paragraph 46.

47. CSS denies the allegations of Paragraph 47.

48. CSS denies the allegations of Paragraph 48.

## AFFIRMATIVE DEFENSES

1. CPDA breached the Contract,, thereby relieving CSS of its remaining obligations under the Contract. In support of this affirmative defense, CSS avers that:

   (a) It was CPDA that failed to perform its obligations under the Contract, in particular, by repeatedly failing to provide necessary information in a timely way as required by section 2.1(b) of the Contract and failing to provide CSS in

advance with the funds necessary to disburse payroll and make the necessary payroll tax deposits, as required by section 3.2 of the Contract.

(b) The parties modified certain of the terms of the Contract through practice. CPDA was obligated to advance the necessary funds to CSS. The invoices were always and could only be sent after the payroll was expended. CSS also provided, at the request of CPDA, periodic accountings of costs and payments.

(c) CSS paid canvassers each Friday. CPDA field managers were obligated to, but often failed, to report to CSS the hours worked by each canvasser the Monday preceding the Friday on which salaries were to be paid. CPDA failed to make to CSS the first payment due under the Contract—payroll, employers' share of withholdings and payroll taxes and fees—and then repeatedly failed to make these payments in advance as required under the Contract.

(d) CSS then used its own funds to pay canvassers and when possible make the necessary withholdings and tax deposits. If CSS did not have enough of its own funds to pay the salary and make the payroll tax deposits, it prioritized paying canvassers. CSS was never repaid for tens of thousands of dollars of its own funds spent in this way under this Contract (and for well in excess of half a million dollars under all of its contracts with CPDA). CSS never missed a payday, while the Contract was in effect.

(e) CSS told CPDA on several occasions when CPDA had failed to perform its obligation to advance the necessary funds to CSS that CSS might not be able to make payroll. But in fact, CSS always paid the canvassers their salaries on payday, using its own funds to do so when necessary. The advances did not

depend on the issuance of invoices, which were sent after the payroll was expended.

(f) No canvasser went unpaid. CSS always paid canvassers even when CPDA's actions made that extremely difficult. When information was not timely submitted, CSS paid canvassers using pay cards and wire transfers based on estimated amounts, later reconciled. CPDA encouraged its affiliates to disrupt CSS's ability to calculate payroll by failing and refusing to provide initial documentation needed to hire canvassers and then failing and refusing to provide accurate information about hours worked in a timely way.

(g) CPDA affiliate MRPA, one of CPDA's Pennsylvania affiliates, with the approval and encouragement of CPDA, repeatedly refused and failed to submit timely and accurate information needed by CSS to calculate payroll of the canvassers working on that affiliate's payroll.

(h) Ultimately CPDA's breaches of the Contract created impossible operational and financial burdens for CSS and, as a result, in October 2018, CSS terminated the Contract. However, even after the termination of the agreement, where it appeared CPDA had no plan or willingness to compensate certain staff, CSS made every effort to see that no staffer was adversely affected or unpaid.

(i) At that point, CPDA had not only been repeatedly late in paying CSS, but had failed to pay tens of thousands of dollars that it owed to CSS under the contract—and well more than half a million dollars under other contracts, plus tax penalties and additional amounts—and those amounts remain due and owing to CSS.

2. CPDA's Counterclaims are barred, in whole or in party, by the doctrines of waiver, laches, estoppel, and/or unclean hands.

3. CSS reserves the right to plead, assert and rely on all proper affirmative defenses lawfully available, including those which may be disclosed or discovered through further assertions by Plaintiff or otherwise through discovery.

WHREFORE, Plaintiff/Counterclaim Defendant CSS prays that Defendants/Counterclaim Plaintiffs' Counterclaims be dismissed with prejudice; that costs be taxed against the Defendants; and for such other and further relief as the Court deems just and proper.

Dated: December 14, 2021    Respectfully submitted,

   /s/ Joseph E. Sandler

Joseph E. Sandler
Mark Lancaster
SANDLER REIFF LAMB ROSENSTEIN & BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W  Suite 750
Washington, D.C. 20005
Telephone: (202) 479-1111
Fax: (202) 479-1115
sandler@sandlerreiff.com
lancaster@sandlerreiff.com

Attorneys for Plaintiff Collective Shared Services, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of December 2021 the foregoing Answer to Counterclaims was filed electronically through the Court's CM/ECF system which caused electronic copies to be served on all counsel of record.

/s/ Joseph E. Sandler

Joseph E. Sandler

Counsel for Plaintiff